BOARD OF COUNTY COMMISSIONERS OF RAMSEY COUNTY *vs.* ANDREW N. NELSON.

Argued June 17, 1892.   Decided Aug. 23, 1892.

Liability of County Treasurer—Payment of Forged Orders.

A deputy clerk of the district court issued false and fraudulent certificates, in which he certified that certain named persons had served as jurors in said court, and were each entitled to a stated sum of money payable to their order as compensation. He obtained the written order of the county auditor on each, directing the county treasurer to pay the same. He forged the names of the respective payees on the back of each certificate, presented the same to the treasurer, and the latter paid over to him the amounts called for out of the county funds, without attempting to satisfy himself of the genuineness of the indorsements upon the backs of the instruments. *Held,* that said treasurer is liable to the county for the sums so paid out. His negligence in failing to ascertain whether the purported signatures of the payees were genuine was the immediate and proximate cause of the loss to the county, just as it would have been had the certificates been properly issued.

Liability not Limited by Liability of Others.

The right of the county to compel its treasurer to account for all public funds which come into his hands cannot be limited or controlled by the fact that it may also look elsewhere for relief in case of loss; for instance, to the clerk of the court in this case.

Appeal by defendant, Andrew N. Nelson, from an order of the District Court of Ramsey County, *Otis,* J., made September 29, 1891, overruling his demurrer to the complaint.

This action was brought by the plaintiff, The Board of County Commissioners of Ramsey County, against the defendant, Andrew N. Nelson, to recover the sum of $15,599.50, being the amount of fraudulent certificates for jury duty paid by him as County Treasurer of Ramsey County. To the complaint, which is fully stated in the opinion, the defendant demurred on the grounds, (1) that plaintiff had not legal capacity to sue; (2) several causes of action improperly united; (3) that the complaint does not state facts sufficient to constitute a cause of action. The demurrer was overruled and defendant appeals.

*G. J. Lomen* and *Munn, Boyesen & Thygeson*, for appellant.

The following provisions of the statutes show the regularity of the certificates and warrants, and the jurisdiction of the respective officers in regard thereto. Sp. Laws 1876, ch. 214, § 6; 1878 G. S. ch. 70, §§ 30, 46; 1878 G. S. ch. 8, §§141, 149; Laws 1879, ch. 13; Laws 1881, ch. 11. These certificates and warrants were perfectly regular and negotiable to the extent that they pass by indorsement or delivery. They were in effect promissory notes. *Clark* v. *Des Moines*, 19 Iowa, 199; 15 Am. & Eng. Ency. of Law, 1208; *Slawson* v. *Loring*, 5 Allen, 340; Dillon, Mun. Corp. § 485; 1878 G. S. ch. 23, §§ 9, 16. They were, therefore, payable to bearer, whether indorsed or not. Where there is a fictitious payee, an innocent holder may treat the paper as payable to bearer. Daniel, Neg. Inst. 139, 143, 144. The treasurer was an innocent holder. He paid certificates and warrants that were payable to bearer, and was therefore not negligent. *Sweet* v. *Comrs. of Carver County*, 16 Minn. 106, (Gil. 96;) Story, Prom. Notes, 386; *McCormick* v. *Bay City*, 23 Mich. 457.

The complaint clearly shows misconduct on the part of the county, the plaintiff in this case. The clerk and deputy were agents of the county. Their acts, within the apparent scope of their authority, were binding upon the county, and their misconduct and fraud attributable to it. *New York, etc., R. Co.* v. *Schuyler*, 17 N. Y. 592; 34 N. Y. 30; Cooley, Torts, 144, 122. The county is therefore estopped to make its own misconduct a ground for an action in its own favor. The proper remedy is against its servants, the clerk and his

deputy, who committed the fraud. The acts of the treasurer were not the proximate cause of the damage or loss to the county, and therefore no action can be maintained thereon. *Township of Grove* v. *Bowman*, 55 Iowa, 129.

*Thos. D. O'Brien,* and *Pierce Butler,* for respondent.

The certificates and warrants were not negotiable instruments. *Camp* v. *Knox Co.,* 3 Lea, (Tenn.) 199; *People* v. *Gray,* 23 Cal. 125; *Chemung Canal Bank* v. *Supervisors of Chemung Co.,* 5 Denio, 517; *Hyde* v. *Franklin Co.,* 27 Vt. 185; *Ohio* v. *Liberty Township,* 22 Ohio St. 144; *State* v. *Huff,* 63 Mo. 288; *Wall* v. *Monroe County,* 103 U. S. 74. Not being negotiable, an indorsement and delivery would not make them payable to bearer, but would operate at most as an assignment of the debt purported to be evidenced by the same, and the payor would be compelled at his peril to know that such assignment was genuine; that is, to know that the indorsements were the signatures of the payees. Such is the rule even if the instruments are negotiable and payable to order. The statute making promissory notes that are payable to the maker or to a fictitious person, of the same effect as if payable to bearer, applies only to notes put in circulation by the maker with knowledge that the name of the payee is fictitious. 1878 G. S. ch. 23, § 9; *Shipman* v. *Bank of New York,* 126 N. Y. 318; *Irving Nat. Bank* v. *Allen,* 79 N. Y. 536; *Turnbull* v. *Bowyer,* 40 N. Y. 456.

Plaintiff is not estopped. Such is the rule in commercial transactions, if the instruments are payable to order, as in this case. *Welsh* v. *German Am. Bank,* 73 N. Y. 424; *Armstrong* v. *National Bank,* 46 Ohio St. 512. The rule is much stronger as to public officers, paying out the money of the people. 15 Am. & Eng. Ency. of Law, 1211; *Mayor* v. *Ray,* 19 Wall. 468.

COLLINS, J. Appeal from an order overruling a demurrer to the complaint herein, interposed on three distinct grounds, only one of which need be considered, namely, that facts sufficient to constitute a cause of action were not stated therein. The pleading in question was purposely drawn very full and complete, in order that

all of the facts on which defendant's liability must rest, if at all, might appear.    It seems from the allegations, that during the years 1889 and 1890 defendant was the treasurer of Ramsey county, while during the same period of time R. T. O'Connor and J. P Davis were clerk and deputy clerk, respectively, of the district court.    Between January 5, 1889, and December 1, 1890, Davis, as such deputy clerk, wrongfully and unlawfully prepared and executed a large number of jurors' certificates, (Sp. Laws 1876, ch. 214, § 6; 1878 G. S. ch. 70, § 30,) in each of which he falsely stated and certified that a certain person therein named, the name being different in each certificate, had attended upon the district court as a petit juror a specified number of days, and that there was due to such person from the county treasury a certain named sum of money, which sum was payable to his order.    The seal of the court was duly attached to each of these certificates.    None of the persons so named had attended said court as jurors or otherwise, nor was there due to any or either of them any sum of money whatsoever from the county treasury..    In brief, the certificates were spurious in every particular, and were executed for the purpose of defrauding the county out of a large sum of money; and in furtherance of the scheme, Davis, as they were issued, presented them to the county auditor to be audited and allowed.    Laws 1879, ch. 13, § 123.    The latter, in writing and over his official signature, indorsed upon the back of each certificate a direction to the county treasurer to "pay within amount from revenue fund," and returned the same to Davis.    Thereupon the latter forged and indorsed upon each the name of the person to whom it had been made payable, presented the same from time to time to defendant treasurer for payment, and by him was paid out of the county treasury the amounts for which these certificates were drawn.    The magnitude of the scheme, and the extent to which it was carried before detection, will be appreciated when we state that on the argument it appeared that Davis in the same manner obtained from defendant's predecessor in office over $8,000 in a little more than one year, and that, according to the complaint, he issued 1,328 of these fraudulent certificates in the two years before mentioned, and was paid thereon nearly $16,000 by defendant treasurer.    According to the allegations

of the complaint, we have a case, then, where certificates for jurors' services in district court, valid on their face, but fraudulent in fact, have knowingly been issued by a deputy clerk of said court, each for a stated amount, payable to the order of the alleged juror, his name being given in each instance, on the back of which there was written by the county auditor an order upon the treasurer to pay the amount out of the revenue fund. These certificates, with the auditor's order on the back, were presented to defendant treasurer for payment by the deputy clerk, with the names of the alleged jurors to whom they were made payable, forged and indorsed upon each by this same deputy, and to him defendant made payment with county funds of the various sums purporting to be due.

The question now before us is as to defendant's liability to the county for the amounts so paid out. The distinction between a case arising on these facts and that cited by appellant's counsel, of *Sweet* v. *County Commissioners of Carver County,* 16 Minn. 106, (Gil. 96,) is obvious. There the county orders or warrants had been issued and accepted, made payable to a certain named person or to bearer. They were transferable by simple delivery, and in terms the treasurer was expressly authorized to pay to the bearer. This he did without knowledge of any defect in the title of the bearer, and it was held, such payment being in good faith every way, that the county was exonerated from further liability. The conclusion of the court was expressly placed upon the fact that in good faith the county treasurer had paid these obligations precisely as he was authorized and directed to do, to the person who presented them, the bearer thereof. But the cases are not analogous, for, giving to defendant the benefit of all that is possible, namely, that together the certificates as issued and the indorsements thereon as made by the county auditor amounted to orders or warrants upon the county treasury, the prominent and stubborn fact remains that the amounts said to be due therein were not to be paid to a bearer of the instruments, but to the order of the several persons named therein as payees. As in the case just referred to, the authority to pay was express and distinct, but, instead of directing that such payment should be to whomsoever might present the orders or warrants, the

direction was that payment should be made to the order of a person designated by name. And at this time it may be well to state that it does not appear in the complaint, as appellant's counsel seem to assume, that fictitious or nonexistent persons were named as payees in these certificates. It is of no importance, probably, but from the language of the pleading the presumption is otherwise. Payments were not made to the persons named as payees, or to their order, in accordance with the terms of the certificates, but were made to Davis, the very person who as deputy clerk had the opportunity and had fraudulently issued the same, solely upon the false and forged indorsements of the names of the payees. Common prudence ought to have suggested to defendant that before making such payments it was incumbent upon him to ascertain and satisfy himself of the genuineness of the signatures which he found indorsed upon the backs of the instruments purporting to be those of the payees therein named. He failed so to do, and this of itself is sufficient to sustain the charge of negligence in the performance of his official duty. As was said by the learned trial judge, had defendant observed the rule of law which governs in commercial transactions of the same nature, he would have detected the forgeries at the outset, and there could have been no great loss to the county or to himself. His disregard of this rule was negligence, undoubtedly, and it was the immediate and proximate cause of the loss to the county, for which defendant must be held responsible, unless the fact that the certificates were fraudulently issued by the deputy of another county officer, for whose malfeasances such officer was also responsible to the county, can be allowed to excuse and relieve him.

The instruments in question were certificates of indebtedness for jurors' services falsely stated to have been rendered by the payees therein named, and on whose order payment was to be made. At most, they were the orders of one officer of a municipal corporation upon another officer for the paying out of municipal funds. Although negotiable in form, they were not commercial paper in any sense. That they were in fact fraudulently issued could not relieve the defendant treasurer from the obligation which rested upon him to see to it that he paid the same to the persons to whom payment was

directed. Had he done this in good faith, we are unable to see why his duty would not have been performed, and in his failure to pay as directed lies the claim that he was negligent. Had the certificates been regularly issued, payment upon forged indorsements would not have excused the defendant treasurer, nor could it have relieved the county from a just indebtedness for jurors' services. The liability of the county treasurer for the funds intrusted to his care cannot be allowed to depend upon the fidelity of some other county officer, but is with him alone, and to be determined by his actions. Nor can the right of the county to require of him that he account for the public funds be limited or controlled by the fact that it may also look elsewhere for relief in case of loss. For the bad conduct of the deputy in fraudulently issuing the certificates the county may have a right of action against his principal, the clerk of court; but it is not confined to that action,—it is not obliged to look to him alone. Unless it be upon the theory that as these certificates were issued without the rendition of services, and fraudulently, the payees must necessarily have been fictitious and nonexistent, we do not quite understand the assertion of counsel that no payees were named, and therefore the instruments were payable to bearer, or the pertinency of the authorities collated by counsel to the effect that, where a payee's name is left blank in a bill or note when the same is issued, such bill or note is in legal effect payable to bearer, and until the payee is actually named the paper will circulate as though made payable to bearer in terms. We have already stated that from the averments of the complaint the presumption is that the payees named were not fictitious or nonexistent, but, in any event, the weight of authority is that the rule cited by counsel applies only to paper put into circulation by a maker with knowledge that the name of the payee does not represent a real person. *Shipman* v. *Bank of New York,* 126 N. Y. 318, (27 N. E. Rep. 371.) The rule can have no application to the issuance of county orders or warrants.

There is absolutely nothing in the appellant's position that the county is estopped from saying that the payees named were fictitious and the indorsements forged. The wrongful acts of the officers of a

municipal corporation cannot create an estoppel against the corporation, the taxpayers, or the people. *Mayor* v. *Ray*, 19 Wall. 468.

Order affirmed.

(Opinion published 52 N. W. Rep. 991.)