SCHOOL DISTRICT No. 45. OF PEMISCOT COUNTY, RESPONDENT, v.
ARTHUR A. CORRELL, APPELLANT.*

In the Springfield Court of Appeals. Opinion filed July 17, 1926.

1.—**Schools and School Districts.** Action against county treasurer, who had not given bond as required by section 11188, Revised Statutes of 1919, to recover school district funds, illegally paid out, could be maintained, though no warrant had been drawn, presented, and refused, and though treasurer's term had not expired.

2.—**Same—Capacity to Sue.** School district, a body corporate, under section 11197, Revised Statutes of 1919, has capacity to sue county treasurer to recover school funds illegally paid out.

3.—**Same—Recovering Funds Illegally Paid Out.** Action to recover from county treasurer school funds illegally paid out need not be brought by

county clerk or some freeholder, notwithstanding section 11188, Revised Statutes of 1919.

**4.—Estoppel—Schools and School Districts.** Established illegal practice of permitting clerk of school board to sign president's name to warrants **held** not to estop school district from asserting claim against county treasurer for money illegally paid out on warrants so drawn, in view of sections 11222, 11223, Revised Statutes of 1919.

**5.—Same—Same—Municipal or Public Corporations—Governmental Functions.** As a general rule the doctrine of equitable estoppel cannot be invoked against a municipal or public corporation as to governmental functions.

**6.—Same—Same—Same—Same.** Contrary to general rule, doctrine of equitable estoppel may be invoked against municipal corporations as to governmental matters, where justice and right demand it.

**7.—Same—Municipal or Public Corporations.** It is the policy of courts to apply the doctrine of equitable estoppel to municipal corporations with much caution.

**8.—Schools and School Districts—Custody of School Funds by County Treasurer.** In view of sections 11222, 11223, Revised Statutes of 1919, county treasurer cannot be considered as bailee of school funds, as at common law, and required only to exercise ordinary care.

---

*Corpus Juris-Cyc. References: Estoppel, 21CJ, p. 1187, n. 80, 86, 87; p. 1192, n. 20; p. 1193, n. 21; Schools and School Districts, 35 Cyc, p. 831, n. 77, New; p. 1054, n. 53, 57.

Appeal from the Circuit Court of Pemiscot County.—Hon. Henry C. Riley, Judge.

AFFIRMED.

*Shepard & Hawkins,* for appellant.

(1) The court erred in overruling defendant's objection to the introduction of any evidence under the petition filed in this cause for the reason said petition failed to state sufficient facts as to show the treasurer in default of any duty he owed to plaintiff district. State ex rel Hickory County v. Dent et al., 121 Mo. 162; State v. Thomas, 17 Mo. 503; 11 Cyc., pp. 452-453. (2) The fact that no minute entries authorizing the issuing of the warrants in question were shown is of no importance in this case, as such records never accompany a warrant to the treasurer's office, neither is the treasurer liable for the failure on the part of the school board to make and keep proper records. Decker v. School District No. 2, 101 Mo. App. 115. (3) Under the record in this case if the plaintiff district sustained a loss, such loss was brought about by and through the method in which the officers and directors of said district conducted its business, and if the district has a cause of action at all it is against the directors for the negligent manner in which they conducted the business of

said district. School District No. 3 v. Smalley, 58 Mo. App. 58; Decker v. School District No. 2, 101 Mo. App. 115. (4) As a defense to this case defendant stated in his answer that the district had permitted one C. A. Wells to manage and conduct the entire affairs of the district; had authorized him to issue warrants the same as the warrants sued on in this case and sign the president's name thereto by "C. A. W." and sign his name to said warrant as clerk or secretary of the board, and the court committed grievous error in this case in not permitting the defendant to make such proof. Smith v. McDole et al., 269 S. W. 629; Hudgins v. Mooresville Causal. School District. 278 S. W. 769. (5) An officer of either a private or municipal corporation can perform all ministerial acts of his office by and through an agent or deputy with the same effect as if such acts were performed by himself in proper person. Hunter v. Himphill, 6 Mo. 73, sec. 121; Small v. Field, 102 Mo. 104; 18 C. J. 784; Thornhill v. Masucci, 216 S. W. 819. (6) The law pertaining to business corporations and their management is the same law that controls municipal corporations such as school districts. Consolidated School District No. 6 of Jackson County v. Shawhan et al., 273 S. W. 182. (7) When the treasurer has no reason to doubt the legality or the propriety of a warrant presented to him for payment, it is his duty to pay it; and, having paid it in the discharge of his duty he ought not to be held liable to the fund out of which it has been paid. McDonald v. Farmer (Tex.), 56 S. W. 557. (8) A county treasurer where his liabilities are not enlarged by the contractual relation growing out of a bond, or by statutory enactments, owes only the duty to use ordinary care to protect the funds in his hand as a bailee and his liability is to be measured according to the common law principle of liabilities between bailor and bailee. Wilson v. People, Col. Sup. Court, 22 L. R. A. 449; State to use of Overton County v. Copeland et al., Sup. Court of Tenn., 31 L. R. A. 844; City of Healdsburg v. Mulligan, Col. Sup. Court, 33 L. R. A. 461.

*Ward & Reeves* for respondent.

(a) We reassert here that the appellant confuses the alleged acts and conduct of the prior presidents of the school district with the acts and conduct of the district itsedf. The members of the board could only act for the district in board meetings and the conduct of the individuals could not be tortured into the acts or conduct of the district itself. There was no attempt made to show that the school board ever at any time at a meeting of the board or by its records authorized, approved, adopted or ratified the alleged authority of C. A. Wells to issue warrants of the school district and sign

the president's name thereto. Only by such formal acts of the board could the acts of Wells be binding on plaintiff district. Kane & Company v. School District, 48 Mo. App. 408; Savage v. Springfield, 83 Mo. App. 323; Perkins v. School District, 99 Mo. App. 483; Johnson v. Dye, 143 Mo. App. 424; Johnson v. School District, 67 Mo. 319; State v. Lawrence, 178 Mo. 350. (b) The general rule is that the doctrine of estoppel cannot be invoked against a public corporation. Johnson v. School District, 67 Mo. 319; Saline County v. Wilson, 61 Mo. 237; Sturgeon v. Hampton, 88 Mo. 213; Steines v. Franklin County, 48 Mo. 167; State v. Bank, 45 Mo. 538; Wolcott v. Lawrence County, 26 Mo. 272; Maupin v. County, 67 Mo. 327; Heidelberg v. St. Francis County, 100 Mo. 76; Snyder v. Railroad, 112 Mo. 527. State ex rel. v. Murphy, 134 Mo. 567; Phillips v. Butler, 187 Mo. 713; State v. Light Company, 246 Mo. 618; Mullins v. Kansas City, 268 Mo. 460; Realty & Power Company v. City of St. Louis, 282 Mo. 180. (c) It (estoppel) can never be invoked against public or municipal corporations except in rare cases where such corporations have accepted benefits from the illegal acts of its officers, and when the acts have been ratified and acquiesced in, after a knowledge of all the facts, for such length of time as would amount to laches, and when to deny the application of the doctrine of estoppel would work a great injustice. All the cases we have been able to find where this exception to the general rule is applied are cases where contracts have been performed in good faith by one dealing with the corporation and the infirmity consisted in a defect of power (not a lack of power) with respect to a matter not prohibited by law. The case at bar does not fall within the exception to the general rule. Hannibal etc., Ry. Co. v. Marion County, 36 Mo. 307; Simpson v. Stoddard County, 173 Mo. 464; St. Joseph v. Railroad, 268 Mo. 47; Town of Montevallo v. School District, 268 Mo. 217; Sparks v. Jasper County, 213 Mo. 243-4; County of Cole v. Trust Co., 302 Mo. 222; Dunklin County v. Chouteau, 120 Mo. 577. (d) Neither the school board nor its president had the power to authorize C. A. Wells to sign the president's name to school warrants. Estoppel cannot therefore be applied to validate the acts of Wells in signing the president's name on the warrants. Stealey v. Kansas City, 179 Mo. 407; State ex rel. v. Murphy, 134 Mo. 567; County of Cole v. Trust Co., 302 Mo. 222; Edwards v. Kirkwood, 147 Mo. App. 615; Phillips v. Butler County, 187 Mo. 713; Mullins v. Kansas City, 268 Mo. 459-462; 21 C. J. 1215.

BAILEY, J.—This action is brought by a common school district against the county treasurer to recover funds wrongfully and illegally paid out by him. On trial to a jury the verdict was for plaintiff in the sum of $1411.20, and from the judgment thereon, defendant has appealed.

The petition alleges that defendant, as the duly elected and qualified treasurer of Pemiscot county, was the legal custodian and had possession of the school funds belonging to the various school districts of the county; that it was the duty of defendant to pay out the funds of the districts only upon warrants drawn thereon duly and and legally issued by order of the boards of directors of the districts and especially plaintiff district; that it was the duty of defendant to not pay out the funds of plaintiff district in his custody except upon legally and properly drawn warrants duly signed by the president of the plaintiff school board and by the clerk thereof; that defendant wrongfully paid out of the funds in his hands belonging to plaintiff district large sums of money upon warrants not ordered by the school board and not signed by the president, which warrants are in said petition fully set out. The petition further alleges that the warrants were drawn without the knowledge or consent of the president or board of directors of plaintiff and that defendant is indebted to plaintiff in the sum of $1275.98, which has been demanded of defendant but payment has been refused.

The answer pleads as a bar that plaintiff has no capacity to sue and is without authority to maintain this suit; that defendant made regular settlements with the county court of plaintiff's funds, which were duly approved by that body; that plaintiff district permitted the president's name to be signed by the clerk during a period of five years and that the loss to the district, if any, was brought about by such method of transacting its business; that the president failed to record his signature in the office of the county treasurer as required by law, and that plaintiff is now estopped by its own conduct from holding this defendant liable for damages.

Numerous errors are assigned, which we shall consider in so far as may be necessary to a proper determination of the issues.

It is first contended that before a warrant properly drawn is presented to the treasurer and refused, he is not in default until his term of office expires and he fails to turn over to his successor the funds due the district. It is admitted that no such warrant was issued, but written demand, in the form of a letter, was made on the treasurer and payment refused. Appellant relies on two cases to support his contention, viz., State ex rel v. Thomas, 17 Mo. 503, and State ex rel. v. Dent, 121 Mo. 162, 25 S. W. 924.

The Thomas case was a suit brought by Oregon county against the county treasurer and his securities on his official bond. Under the statute then in force, the county treasurer could only pay out moneys in the county treasury by warrants drawn on him by order of the county court. There was no averment in the petition that the county ever made an order or drew a warrant for the amount in controversy or that he ever refused to disburse money when properly required.

It was held the breaches of the bond were insufficiently assigned in the petition.

The Dent case was a suit by the county against the county clerk on his official bond for arrearage. Section 5626, Revised Statutes 1879, provided that the county court should ascertain the amount of excess fees retained and make an order directing the clerk to pay same into the county treasury. It was held that "whenever a particular statutory method of proceeding is pointed out as the one to be pursued, then such method is exclusive," and that since the county court failed to comply with the statute, the conditions of the bond were not broken.

In the case at bar the county treasurer failed to give a bond as custodian of the school moneys, which he was required to do. [Sec. 11188, R. S. 1919.] No suit could therefore be maintained on his bond as was done in the two cases cited.

Section 11188 (supra) also provides that money shall be "paid out" on warrants duly issued by order of the board of directors. Hence, it is argued, this suit cannot be maintained against the county treasurer because no such warrant was ordered and the treasurer is, therefore, not in default. We do not consider the Thomas and Dent cases authority for the contention made in this case. In those suits the decisions were based on a construction of the statutes relative to a breach of the conditions of the bonds on which suits were brought. The bonds were statutory and the directions of the statute were held mandatory. The present suit is not bottomed on the statute. It is an action to recover money wrongfully paid out. No rights of securities are involved. What useful or reasonable excuse can there be for requiring the school board to first draw a warrant on the treasurer for the amounts he has paid out on invalid warrants? The warrants which he is charged with having wrongfully paid are fully set out and no advantage can be taken of him in that respect. The statute requiring money to be paid out only on warrants does not cover the situation here, but refers to disbursements of the district's funds made in the regular way in the due course of business, which can only be made on proper warrants. The money judgment sought here is not for a failure to pay a warrant but to recover money improperly paid. In a sense, the relief asked is against the treasurer personally and not in his official capacity. He is not required to "pay out" the districts' money but out of his own private property to re-imburse the district.

Under section 11197, Revised Statutes 1919, plaintiff district is constituted a body corporate and is capable of suing and being sued. This cause of action, as we view it, being wholly independent of the statute requiring warrants to be first drawn, we are unable to discover any legal impediment to the maintenance of this action by the school

district in so far as the statutes are concerned. [State ex rel. v. Chick, 146 Mo. 1. c. 654, 48 S. W. 829; State ex rel. v. Henderson, 142 Mo. 1. c. 605, 44 S. W. 737.]

It is further contended that this action could be brought only by the county clerk or some freeholder. This contention is based on certain provisions found in section 11188, supra, as follows: "On the forfeiture of such bond (of the treasurer) it shall be the duty of the county clerk to collect the same for the use of the schools in the various districts. If such county clerk shall neglect or refuse to prosecute, then any free-holder may cause prosecution to be instituted." We construe this section to apply only to actions on the bond of the treasurer. There is not a word in the statute authorizing the clerk or freeholder to institute a suit except to collect the amount due on the bond. Since there was no bond no such action could be maintained. There is good reason for limiting the power of the clerk or freeholder to the bond itself. The bond required is given for the benefit of all the districts in the county. It is, therefore, proper that one person or official should have authority to bring the suit on the bond in order to avoid multiplicity of suits. But where there is no bond and the suit affects only one district, the reason for vesting the exclusve power in the clerk or freeholder vanishes. We, therefore, hold against appellant on this contention.

Error is assigned in the refusal of the trial court to permit appellant to introduce testimony tending to prove that plaintiff district had for a number of years permitted one C. A. Wells to issue warrants for the valid obligations of the district by signing the president's name, which warrants were executed in the same manner as the warrants sued on in this case. It is not contended that the directors authorized Wells to sign and issue such warrants by any formal or recorded action, but that they permitted Wells to do so with their knowledge and consent for such period of time as to cause such acts to become a rule of action between the plaintiff school board and defendant treasurer. The evidence offered was rejected on the theory, as we understand, that estoppel would not lie against the district. No attempt was made to prove that J. C. Clark, president of the school board at the time the warrants in controversy were issued, individually authorized Wells, as clerk, to sign his, the president's, name to such warrants; nor is it contended that the statute, which requires all warrants to be signed by the president of the board, was complied with. The evidence offered and the defense pleaded, as we gather from the record, is based solely on the proposition that the manner of transacting business over a number of years gives rise to the invoking of the rule of estoppel against the plaintiff district.

Defendant's offer of proof on this proposition occurred numerous times during the trial. The offer in general terms was to the effect

that through a period of at least four years prior to the years 1922-1923, when the warrants in question were issued and paid, a large number of warrants issued for valid obligations of the district were signed in the same manner as the warrants in this suit, that is, the president's name by ''C. A. W.'' followed by the Secretary's signature ''C. A. Wells.''

There was also an offer to prove that the immediate predecessor in the office of the president of board had authorized C. A. Wells to issue warrants and sign the president's name by ''C. A. W.'' There was no attempt to prove that any member of the board, other than the president, had any knowledge of such manner of issuing and signing warrants of the district or ever consented to such action in any manner. The most that can be said as to the offer of proof in respect to the board as a whole or members other than the president having knowledge thereof, is that, since a great number of warrants were signed in the manner heretofore indicated over a period of years, the board as a whole, must, by inference, have had knowledge thereof. But in a suit of this character no such inference can fairly be drawn. Our statute in relation to the payment of district indebtedness of districts such as here, evidently was intended to place every possible safeguard around the issuance and payment of warrants. It requires an order of the board of directors and the warrant must specify clearly the species of indebtedness. The president of the board shall first visit the office of the county treasurer and record his signature in a book to be kept for that purpose. [Sec. 11222, R. S. 1919.] It is also provided that the warrants shall be drawn in a particular form set out in the statute, ''and shall be signed by the president of the board and countersigned by the district clerk.'' It is further provided that, ''No Treasurer shall honor any warrant unless it be in the proper form etc.'' [Sec. 11223, R. S. 1919.]

With these provisions of our statute in mind, we shall now consider the question of estoppel or laches on the part of the plaintiff district. It is conceded by appellant in this case that as a general rule the doctrine of equitable estoppel cannot be invoked against a municipal or public corporation as to governmental functions. [Dunklin County v. Chouteau, 120 Mo. 577, 25 S. W. 553.] It is contended, however, that such doctrine may be invoked against a municipal corporation as to governmental matters where justice and right demand it. The leading cases cited in support of this proposition are: Hannibal & St. Joseph's Ry. Co. v. Marion Co., 36 Mo. 307; Town of Montevallo v. Village School District, 268 Mo. 217, 186 S. W. 1078; City of Mountain View v. Tel. Ex., 243 S. W. 153.

The Hannibal v. St. Joseph Ry. Co., case, was a suit to recover interest which had accrued on a note given by Marion county to said

railroad company in payment of subscription on stock. The county court, by an order of record, had appointed the president of the court as agent for the county to subscribe for stock in the plaintiff railroad. The Legislature had granted authority to make such subscription. The principal contention was that the act of the Legislature was unconstitutional. The contract inured to the benefit of the county which had long acquiesced therein. The court held that "The rules which regulate the business transactions of life and which enjoin good faith, honesty and fair dealing, are alike applicable to individuals and corporations. The county of Marion, to aid a great public undertaking, which was to redound to the interests of its citizens, subscribed stock in a railroad enterprise; like all other shareholders, it received a certificate of stock and now retains and holds the same, and continues to enjoy all the benefits derivable therefrom. Upon the strength of that subscription large sums have been expended, and important investments made. It would be grossly immoral and unjust to allow it to involve others in onerous engagements, and then, after a lapse of ten years, silent acquiescense, repudiate its obligation."

In the Montevallo case it was held that the doctrine of estoppel could be invoked against a city which had ceded to a school district a plot of ground theretofore dedicated to public purposes upon which the school district, in good faith, had erected valuable improvements. The decision is based on the proposition that estoppel may be invoked against a municipal corporation where justice and right demand it.

In the Mountain View case the city undertook to enjoin the defendant telephone company from erecting its poles, wires, etc., in the city. The Telephone Company, on authority of a permit signed by the chairman of the board of trustees of the plaintiff city, had established a telephone system in the city and expended large sums of money thereon over a period of ten years. Defendant had no franchise but invoked the doctrine of estoppel. The opinion of this court by Judge FARRINGTON, holding that estoppel could be invoked against the city under such circumstances, was approved by our Supreme Court.

The foregoing cases, as well as many others cited by able counsel for defendant, unquestionably announce a sound and just rule which permits the doctrine of estoppel to be invoked against public or *quasi*-public corporations under exceptional circumstances. The policy of the courts, however, is to apply the doctrine of equitable estoppel to municipal corporations with much caution. [City of Mountain View v. Telephone Company, supra, l. c. 155.] The decisions in which the doctrine has been applied to such corporations all rest, of course, on the proposition that where right and justice de-

mand that a municipal corporation be not permitted to repudiate the acts and conduct of its officers and municipal bodies entrusted with the conduct of its affairs, then the law says that such corporation shall not be shielded to the damage of others. But in the case at bar we are confronted with a state. of facts which forms an insurmountable barrier to the invoking of the rule. There were in all fifteen warrants paid by defendant upon which suit was brought. Of these fifteen warrants, eight were payable to C. A. Wells, the clerk himself, and the president's name, as shown on the face thereof, was signed by C. A. Wells in each instance. All the warrants were endorsed by and paid to C. A. Wells by defendant treasurer. If the moneys thus paid out were in fact paid to discharge honest obligations of the school district or if the school district had received any consideration or benefit whatever therefrom, we should have an entirely different situation. The evidence is overwhelming and undisputed that the school district received nothing for the money paid out on these warrants. The erstwhile clerk is gone. These warrants were fraudulent. Can it now be said that equity and good conscience demand that the school district be estopped from disavowing the acts of its dishonest clerk on the theory that by a long course of conduct its president had permitted the clerk to sign his name to warrants in the very teeth of a statute prohibiting such method of doing business? We have been cited to no authority and have found none which holds that a municipal corporation can be estopped from denying or repudiating an act of its agent which was fraudulent or prohibited by law. On the contrary, the authorities hold that estoppel will not result against a municipality from official fraud or corruption. [10 R. C. L. 708; School District No. 3 v. Smally, 58 Mo. App. 658; Ramsey County v. Nelson, 51 Minn. 79, 59 N. W. 991; Flowers v. Logan County, 138 Ky. 59, 127 S. W. 512; 21 C. J. 1191.]

We are also unable to discover any case in which the doctrine of estoppel has been invoked against a municipal corporation which received no benefit or consideration from the illegal or unauthorized act of its agent. The decisions in this State in which the municipal corporations have been estopped, seem to demonstrate the contrary to be the rule. [St. Joseph v. Railroad, 268 Mo. 47, 186 S. W. 1080 and cases cited.]

The law, as heretofore indicated, has placed every safeguard around the paying out of the school district's moneys. The act of the county treasurer in paying these warrants was directly in the face of the statute. The warrants signed by the clerk and payable to the clerk were in themselves a warning. The district is out its money for which no benefit was received. The act of the clerk was fraudulent. To permit the district to be thus defrauded of its money by the act of its agents would absolutely nullify the statutory safeguards the Legis-

lature has seen fit to provide. While no improper motive or lack of good faith can be attributed to defendant in this case, we do not believe it to be a situation in which the exception to the general rule of estoppel as to municipal corporations can be invoked. We hold, therefore, the trial court did not err in sustaining the objection to the evidence offered by defendant relative to an estoppel.

Some contention is made in regard to the fact that the president failed to record his signature with the treasurer as required by law. This was a duty which the law imposed but his failure to perform that duty can in no way effect the merits of this controversy. The warrants did not purport to be signed by him. The fact that his name was not recorded could not have misled the treasurer. More than that, there is no contention that he was misled thereby, but the principle defense is bottomed on the proposition that the clerk was authorized to sign the president's name. If such were true and estoppel would lie, the recording of the president's signature could not possibly have affected the situation.

It is urged that defendant's duties and obligations were those of a bailee to exercise ordinary care to keep the property safe and return it when the time of bailment had expired as at common law. That could only be true where the statute fails to state what the treasurer's duties are. As heretofore pointed out, the statute specifically provides under what circumstances money of the district may be disbursed. Therefore the law of bailor and bailee has no application to this case.

Other errors have been assigned but in view of what has been said, a further consideration of them would be of no avail. The judgment is accordingly affirmed. *Cox, P. J.,* and *Bradley, J.,* concur.