BOARD OF PUBLIC WORKS OF ROLLA, MISSOURI, Respondent, v. SHO-ME POWER CORPORATION, Appellant, No. 42592—244 S. W. (2d) 55.

Court en Banc, November 12, 1951.

Rehearing Denied, December 10, 1951.

*Gregory C. Stockard* and *Louis H. Breuer* for appellant.

*E. W. Allison* and *Dewey A. Routh* for respondent.

HOLLINGSWORTH, J.—By this action, designated a suit in equity, plaintiff (respondent) seeks a judgment declaring null and void a purported contract entered into between "Rolla, Missouri, Municipal Utilities Board" and defendant (appellant) on April 24, 1948, whereby defendant agreed to sell and said board agreed to purchase all electric energy required by the City of Rolla, Missouri, and its inhabitants, for a term of at least five years and thereafter until the contract was terminated by either party upon six months notice.

The grounds upon which plaintiff bases its claim for relief are (1) that the contract was not executed or approved by any officer or agency of the City of Rolla having authority so to do, and (2) misrepresentations held out as an inducement to the execution of the contract and continuing breach of the provisions thereof. The petition further alleges that the purported contract constitutes a cloud upon the rights and privileges of plaintiff to obtain an adequate supply of electric energy required by the municipally owned public utilities of Rolla, and asks declaratory relief.

Defendant pleaded that jurisdiction of the subject matter of the action was vested exclusively in the Public Service Commission, which plea was overruled. Defendant then, by answer, joined issue on the allegations of plaintiff's petition and further pleaded that the City of Rolla knew of the terms of said contract, consented thereto, recognized it, operated under it, and accepted its benefits; and that plaintiff was therefore estopped to deny its validity.

The trial court filed a detailed finding of facts and conclusions of law. It found the evidence in favor of plaintiff on both grounds pleaded, but rendered judgment in its favor on the sole ground that the contract was null and void because it was never executed or approved by the City of Rolla or any authorized officer or agency thereof. Upon appeal to the Springfield Court of Appeals, the judg-

ment of the trial court was reversed. See 236 SW 2d 603. The cause was ordered transferred to this court under the provisions of Sec. 10, Art. V, Constitution of Missouri.

▉▉▉ Rolla is a city of the fourth class. It has owned and operated an electric energy distribution system since 1928, and since 1932 its electric current has been furnished by or purchased from defendant and its predecessors. From 1932 to 1941, both inclusive, this was furnished to the city under a series of written contracts, but from 1942 until the execution of the contract here in suit on April 24, 1948, there was no written contract.

In August, 1944, acting under the provisions of §§ 91.450-91.550, R. S. Mo. 1949, the City, by Ordinance No. 630, established the Board of Public Works, plaintiff herein, since which time that board has managed, operated and controlled the electric distribution system. The ordinance closely follows the wording of the statutes authorizing the creation of boards of public works and defining their duties. The ordinance specifically provides, as do the statutes, that all contracts made by the board shall be submitted to the common council for approval. For some reason not made clear in the record the Board of Public Works has functioned, in some instances at least, as it did in the signing of the contract in suit, as "Rolla Municipal Utilities".

Beginning in 1946, negotiations for a written contract were in progress between defendant (and its predecessor) and the Board of Public Works. It is conceded that during these years the voltage of electric current furnished the City was too low for its needs and service was too frequently interrupted. The board was insisting these deficiencies be corrected before entering into a written contract, and defendant was attempting, but failing, to do so. During the course of these negotiations, defendant, acting through its chief engineer, urged Mr. Bronson, general manager of the city's utilities, to "support the signing of the contract" here in suit, and stated to him that such a contract would assist defendant in obtaining a five million dollar loan it was then seeking from REA, and that if such a loan were obtained, defendant had tentatively planned to use a part of it to build a steam plant on the Gasconade River which would enable defendant to furnish the city with adequate service.

Shortly prior to April 24, 1948, defendant mailed to the Board of Public Works, addressed to the attention of Mr. Bronson, general manager, five unsigned copies of the contract in suit. On April 24, Mr. Bronson presented these to the Board of Public Works, and the board, as shown by a certified copy of its recorded minutes of that date, authorized their execution. All copies were thereupon executed thus: "Rolla Municipal Utilities By H. E. Castleman Chairman Pres. Rolla Board of Public Works". Mr. Bronson then took all copies to the office of the city clerk. The Board of Aldermen was not in session and no member thereof was present. The city clerk

then and there affixed the seal of the city to each copy and signed his name thereto following the word "Attest". All copies were then returned to defendant. Defendant executed them and returned one executed copy to the Board of Public Works.

The records of the Board of Aldermen do not show any approval of the contract. Mr. Schuman, Secretary of the Board of Public Works, testified that, insofar as he knew, the city officials were not consulted about the contract and had no knowledge the board was entering into it. There was no testimony to the contrary.

The contract made no change in the rates or in the methods of operation, accounting or payment of the bills rendered by defendant, except as hereinafter noted. Both before and after the contract was signed, monthly bills were presented to the Board of Public Works, which, when approved, were sent with checks prepared by the Board of Public Works to the city clerk, where the checks were countersigned by the city clerk and the mayor. The one difference in the written contract was that it afforded the city "the benefit of the averaging of the three highest 15-minute interval demands during the month", whereas contracts between defendant and other cities "charge them on the one highest 15-minute interval". There was no further explanation as to how or to what extent this constituted a benefit to the city, and it is not thereafter referred to in the case.

The disposition which we make of this case renders it unnecessary to consider the evidence relating to alleged misrepresentations made by defendant as an inducement to the Board of Public Works to enter into the contract. Such other evidence as may be necessary to disposition of the case will be hereinafter stated.

 Defendant assigns error in the refusal to sustain its plea challenging the jurisdiction of the court over the subject matter of the action. Its contention is that, since plaintiff admits defendant is a public utility operating under supervision of the State Public Service Commission and the pleadings show that the controversy relates to alleged insufficiency of service furnished plaintiff by defendant, initial and exclusive jurisdiction is vested in that body. In support of this contention defendant cites: Sections 393.130 and 393.140, R. S. Mo. 1949; State ex rel. Circse v. Ridge, 345 Mo. 1096, 138 SW 2d 1012; State ex inf. Barker v. Kansas City Gas Co., 254 Mo. 515, 163 SW 854; State ex rel. Consumers Public Service Co. v. Public Service Commission, 352 Mo. 905, 180 SW 2d 40; State ex rel. Kansas City Public Ser. Co. v. Latshaw, 325 Mo. 909, 30 SW 2d 105. A careful reading of each and all of the statutes and cases cited reveals that none of them tend in the least to support the contention made.

This action, whether it be considered an action in equity or an action for a declaratory judgment, sought to obtain a decree annulling the contract. Even that part of the petition alleging that defendant both prior and subsequent to the execution of the contract

failed to furnish adequate and continuing electric energy seeks not to obtain an order requiring defendant to furnish such service, but rather seeks annulment of the contract because defendant represented it would do so, which representation, it is alleged, induced plaintiff to enter into the contract. The promises allegedly made are pleaded as the inducement and the failure to keep them is pleaded to show them to be *mis*representations.

The Public Service Commission is not a court and has no power to declare or enforce any principle of law or equity. American Petroleum Exchange v. Public Service Com., Mo. Sup., 172 SW 2d 952, 955. See also Bell v. City of Fayette, 325 Mo. 75, 28 SW 2d 356, and May Department Stores Co. v. Union Electric Co., 341 Mo. 299, 107 SW 2d 41. On the other hand, circuit courts have exclusive original jurisdiction in all civil cases not otherwise provided for. Sec. 14, Art. V, Constitution of Missouri. The trial court did not err in overruling defendant's plea of lack of jurisdiction of the subject matter of the action.

■ The finding of the trial court that the contract was void because not approved by any authorized official or agency of the city, and its refusal to hold that plaintiff, by its acts and conduct, was estopped to assert its invalidity is assigned as error.

Assuming for the purpose of this opinion only that the "Rolla Municipal Utilities" may be treated as a de facto agency of the Board of Public Works, and that the Board of Public Works may be considered an agency authorized by statute to enter into this contract in its name in behalf of the city, yet, by mandatory injunction of both the statute under which it was created and the ordinance creating it, all contracts of the Board of Public Works must be submitted to the common council for approval. Was this done? There is not a word of written or oral evidence that it was. To the contrary, the evidence conclusively establishes it was not.

It would seem obvious that where the statute requires contracts made by an agency of the city to be approved by its legislative body (in this case the Board of Aldermen) the approval thereof must comply with the formalities required by statute for the execution of contracts entered into directly with the city in the first instance. Atwill v. City of Richmond, Mo. App., 132 SW 2d 672, 674.

Therefore, we must determine what is required by the law of this State in order for defendant to enter into a binding contract either directly with the City of Rolla or through its Board of Public Works for the sale of the electric energy specified in the contract under consideration.

■ "In some municipalities the charter or an applicable statute requires that all contracts shall be by ordinance. Such a requirement constitutes a mandatory condition precedent, and noncompliance therewith renders the contract unenforceable. However, in the ab-

sence of a mandatory requirement, contracts may be authorized by resolution. And where the state legislature has authorized a municipality to make a contract but does not require it to be done by ordinance, the legislative body of the municipality may contract by vote upon motion, or by the passage of a resolution. Thus, a charter provision that all 'legislative power of the city' must be exercised by ordinance does not require authority to enter into a contract to be conferred by ordinance, since the letting of contracts is not a legislative function. Under an ordinance authorizing the making of a contract by certain committees 'subject to confirmation by the common council,' such confirmation may be by joint resolution, and need not be by ordinance." McQuillin, "Municipal Corporations", 3rd Ed., Vol. 10, § 29.19, pp. 232-236.

In this State, the law requires that all contracts entered into by cities "shall be in writing and dated when made, and shall be subscribed by the parties thereto, or their agents authorized by law and duly appointed and authorized in writing", § 432.070, R. S. Mo. 1949; and further that in cities of the fourth class the board of aldermen shall cause to be kept a journal of its proceedings, § 79.150, R. S. Mo. 1949. There is no statute requiring a contract such as is involved in this case to be authorized by ordinance. Where there is no such requirement, it is sufficient but necessary that the authorization be entered of record upon the minutes of the board of aldermen. Eureka Fire Hose Mfg. Co. v. City of Portageville, Mo. App., 106 SW 2d 513, 516; Haskins v. City of De Soto, Mo. App., 35 SW 2d 964, 967; Austin Western Road Machinery Co. v. City of New Madrid, Mo. App., 185 SW 2d 850. See also West Virginia Coal Co. v. City of St. Louis, 324 Mo. 968, 25 SW 2d 466, 469; Kansas City v. Rathford, 353 Mo. 1130, 186 SW 2d 570, 574. Defendant was bound to take notice of, and is governed by, the limitations of the power of both the city and its board of public works to enter into this contract. West Virginia Coal Co. v. City of St. Louis, supra, loc. cit. 471; Eureka Fire Hose Mfg. Co. v. City of Portageville, supra, loc. cit. 516-517.

Defendant contends, however, that plaintiff is estopped to deny its validity, by reason of the act of the city clerk in signing and sealing it, permitting defendant to act under it, accepting the service rendered, paying the bills submitted to the city for electric energy furnished, and "by receiving and appropriating large sums of money monthly derived under this contract".

The courts, with much caution, may apply the doctrine of estoppel in pais against municipalities in exceptional cases where the circumstances require it. State ex inf. Shartel v. Missouri Utilities Co., 331 Mo. 337, 53 SW 2d 394, 89 ALR 607; School District No. 45 v. Correll, 220 Mo. App. 322, 286 SW 136, 140. "To constitute estoppel in pais, three things must occur: First, an admission,

statement, or act inconsistent with the claim afterwards asserted and sued on; second, action by the other party on the faith of such admission, statement, or act; and, third, injury to such other party, resulting from allowing the first party to contradict or repudiate such admission, statement, or act." State ex inf. Shartel v. Missouri Utilities Co., supra. The city is not shown to have knowingly operated under the contract or to have received any benefit from defendant it would not have received had defendant continued to furnish its requirements under the prior oral contract. Defendant is not shown to have suffered any detriment or expended any money or was led to do anything it would not have done had the contract never been executed. Application of the doctrine of estoppel is not warranted by the facts in this case.

Our conclusion that the contract is void makes it unnecessary to determine the remaining assignments of error, which relate █ to the charge of misrepresentations allegedly made as an inducement to enter into the contract and the evidence admitted in support thereof.

█ But defendant argues another matter that gives us concern: Under "Points and Authorities" set forth in its brief, defendant says, "The City of Rolla did not institute this suit, was never made a party thereto and so far as the record goes no official of the city has ever made the contention that the contract was not fully carried out by the appellant." This is true, with this possible exception: On March 8, 1949, shortly prior to the filing of this suit on May 20, 1949, the records of the Board of Aldermen show it adopted Resolution No. 240 authorizing and directing the Board of Public Works to negotiate a contract with "Union Electric" for the purchase of electric current for the city. This must mean that the members of the Board of Aldermen either did not then have knowledge of the contract with defendant or, if they did know of it, were repudiating it.

Neither the motion for new trial nor the assignments of error mention or claim that plaintiff did not have authority to maintain this action for and in behalf of the city. However, the petition alleges the organization of the Board of Public Works and that it was "duly appointed, qualified, organized and acting as such, and vested with authority and power to exercise and exercising full control over the management and operations of said municipally owned electric light and power plant and distribution system, including power and authority to enforce the performance of all contracts and work pertaining to the proper operations of said municipally owned electric light and power plant and distribution system, as by law provided." The answer admits the above quoted allegations of the petition, but thereinafter denies "that any cause of action exists now or ever in favor of plaintiff against defendant."

The transcript does not show the question was ever presented to or considered by the trial court. Under the record as made we are not required to consider the matter. But if, as a matter of law, plaintiff has not the power or authority to maintain this action as an agency of the city, it would follow that a judgment rendered herein would not be binding upon the city. And, too, the rendition of an opinion assuming the right of a board of public works to maintain an action of this kind, if no such right existed, could and probably would lead to much future confusion in bringing suits of a similar nature.

The statutes, §§ 91.450-91.550, R.S. 1949, authorizing the establishment of boards of public works and defining their powers do not invest such boards with authority to institute suits in their own names or as agencies of the city. Neither does the ordinance creating the plaintiff board purport to invest it with such power,—if such power lawfully could be delegated to it by ordinance; and we have found no authority or precedent for holding it might have implied power to maintain a suit in behalf of the city.

This action, although designated an action in equity, is in effect an action for a declaratory judgment. The petition, after pleading that the existence of the contract places a cloud upon its right to obtain electricity elsewhere, then prays that the contract be declared void and "for such other and further declaratory judgments and relief", etc., as may be proper.

If it is an action within the meaning of the Declaratory Judgment Act, §§ 527.010-527.140, R.S.Mo. 1949, as we believe it to be, then by § 527.110 it is made mandatory that "In any proceeding which involves the validity of a municipal ordinance or franchise, such municipality shall be made a party", etc. The purported contract by its terms is a "franchise", in that plaintiff agrees to buy and receive from defendant all of the electric energy required by plaintiff for a term of at least five years. See definitions of "franchise", 37 C. J. S. § 1, p. 141, et seq. Furthermore, regardless of the provisions of the Declaratory Judgment Act, the Civil Code, [62] § 507.010, R.S.Mo. 1949, specifically requires that every action shall be prosecuted in the name of the real party in interest. There can be no question that the City of Rolla is the real party in interest in this case.

We are, therefore, confronted with this situation: The case has been fully tried on the merits as though plaintiff were the lawful agency of the real party in interest to bring and maintain the action. The error in bringing the suit in the name of the Board of Public Works is not properly before this court for review, § 512.160, R.S.Mo. 1949. To affirm the judgment in the present state of the record would be to affirm a judgment of doubtful validity and lead to confusion in the bringing of similar suits in the future; to

reverse the judgment would put both the city and defendant to the additional expense of a retrial and subject them to whatever harm might occur by reason of further delay in obtaining a final adjudication of their respective rights under this purported contract. Both of such untoward eventualities should be avoided if possible, and especially is this true if the City of Rolla actually motivated the action and proceeded upon the theory that plaintiff was the proper agency to maintain it, as we must presume, for the time being, it did; nothing to the contrary appearing. But the records in this case should affirmatively so show.

Section 512.160, par. 3, R.S.Mo. 1949, provides that: "The appellate court shall examine the transcript on appeal and * * * award a new trial or partial new trial, reverse or affirm the judgment or order of the trial court, or give such judgment as such court ought to have given, as to the appellate court shall seem agreeable to law. Unless justice requires otherwise the court shall dispose finally of the case on appeal and no new trial shall be ordered as to issues in which no error appears."

If, therefore, the City of Rolla, within fifteen days, by instrument of writing filed in this court, adopts the pleadings and evidence, records and briefs, and asks to be substituted as party plaintiff herein, the pleadings, records, judgment and briefs will be considered as amended in conformity therewith, and the judgment is affirmed; otherwise, it is reversed. All concur.