STATE OF MISSOURI upon the Information of Stratton Shartel, Attorney-General, ex rel. the CITY OF SIKESTON, Relator, v. MISSOURI UTILITIES COMPANY, a Corporation.—53 S. W. (2d) 394.

Court en Banc, October 5, 1932.

338

*Roger A. Bailey* for relator.

*I. R. Kelso, R. D. Abbott* and *D. C. Chastain* for respondent.

ATWOOD, C. J.—This is an original proceeding by information in the nature of *quo warranto* to oust respondent, Missouri Utilities Company, from the city of Sikeston, Missouri, and exclude it from

all rights, privileges and franchises of furnishing electric light and power within said city, and from all rights, privileges and franchises of occupying the streets, avenues and alleys of said city with its poles, wires and other electrical equipment.

In the information, which was signed by the Attorney-General of the State of Missouri, at the relation of the city of Sikeston, and by the City Attorney of the city of Sikeston, it is alleged that said city was organized as a city of the fourth class in 1891 and continued to exist as such until April, 1925, when it was organized and continues to exist as a city of the third class; that the board of aldermen of said city passed an ordinance on November 17, 1902, granting to the Sikeston Electric Light Company, its successors and assigns, "the right, privilege, consent and franchise to construct, erect, maintain and operate and keep an electric light and power plant within the city of Sikeston, Scott County, Missouri, with all the necessary buildings, engines, boilers, dynamos, electrical apparatus, poles, wires, guy wires and all other appurtenances and fixtures for the purpose of furnishing and supplying suitable and sufficient electric light and power to said city, and the inhabitants thereof, and such additions to said city as may hereafter be made, for a period of twenty years from and after the passage of this ordinance," and giving to said Sikeston Electric Light Company, its successors and assigns, the right to "enter upon any street, alley, avenue, bridge or public ground belonging to or under the control of said city, to set their poles and stretch their line wires for such lights and power" under the conditions stated in said ordinance; that at a special election provided for in said ordinance and held December 16, 1902, a majority of the qualified voters of said city assented to said ordinance, and thereafter the election returns of said special election were duly canvassed by the board of aldermen of said city and the franchise declared carried; that "the city of Sikeston, Missouri, has not, by resolution, ordinance, or otherwise, submitted to the qualified voters of said city a proposition to grant to any person or persons, firm or corporation the right, franchise, and privilege of using the streets, avenues and alleys of said city for the purpose of supplying electric light and power to the residents thereof since the organization of said city as aforesaid, with the single exception of the franchise granted to the Sikeston Electric Light Company, as above set out, which said grant of the rights of franchise commenced on the 16th day of December, 1902, and expired twenty years thereafter and on the 16th day of December, 1922; that the Missouri Utilities Company, defendant herein, was and is the last lineal successor to the Sikeston Electric Light Company; that the said Missouri Utilities Company never has had and does not now have any other right, title, franchise or privilege to use the streets, avenues and alleys of the said city or to carry on

the business of supplying electric light and power to the residents of said city other than the grant of December 16th, 1902, which said grant or privilege has long since expired.''

It is further alleged in said information that on July 15, 1931, the said city of Sikeston adopted a resolution requesting and directing the said Missouri Utilities Company to vacate the streets, avenues and alleys of said city and to discontinue the business of furnishing electric light and power to the residents thereof, and caused a copy thereof to be served upon the said Missouri Utilities Company on July 16, 1931; that said company has ever since failed, refused and neglected to comply with said resolution and has taken part in and directed certain activities which indicate an intention to resist the same and continues to carry on a general electric light and power business and use the streets, avenues and alleys therefor, in violation of said resolution and without the benefit of a franchise.

It is further alleged in said information that ''the city of Sikeston, Missouri, now has in operation a municipally-owned electric light and power plant and a distribution system, sufficient to furnish all users of electric light and power within the limits of said city efficient and continuous electric service; that there now exists no public necessity for the continuance of the electrical service as supplied by the Missouri Utilities Company, defendant herein; that in order to pay for the construction of the municipally-owned electric light and power plant and distribution system, the said city of Sikeston did on June 1, 1930, issue bonds of said city in the sum of one hundred and fifty thousand dollars ($150,000), which said bonds, together with the interest thereon, constitute a tax against all the taxable property within the limits of said city of Sikeston, which said indebtedness and the interest thereon will have to be paid by a direct tax upon the taxable property of said city, unless the same can be paid from the earnings of said plant; that competition with the Missouri Utilities Company may result in such a tax being levied upon the taxpayers of said city; that the maintenance of two electric distribution systems upon the streets, avenues and alleys of said city is not only unsightly, but constitutes a dual hazard to laboring men working on and maintaining both lines and upon the general public; and that the said Missouri Utilities Company is furnishing electric light and power within said city and maintaining upon the streets, avenues and alleys of said city a distribution system for the purpose, without the benefit of a franchise or grant of privilege from said city.''

Upon service of our order to show cause respondent filed return and answer admitting certain formal allegations in the information, denying that it ever exercised any rights, privileges or franchises in said city of Sikeston not granted to it by the State of Missouri,

and affirmatively pleading matters of defense, including grounds of estoppel, hereinafter stated and discussed. Relator thereupon filed motion for judgment on the pleadings.

It is apparent on the face of the pleadings that the ordinance franchise assented to by a majority of the qualified voters of the city of Sikeston at the special election held on December 16, 1902, as aforesaid, "expired twenty years thereafter and on the 16th day of December, 1922," and the rights here claimed by respondent are not asserted thereunder. However, the information also charges that respondent "never has had and does not now have any other right, title, franchise or privilege to use the streets, avenues and alleys of the said city or to carry on the business of supplying electric light and power to the residents of said city." By way of defense respondent answers and avers, among other things, that it "is now and has been since the 24th day of February, 1925, lawfully operating its electric plant and properties in the city of Sikeston, Missouri, under and by virtue of the authority granted to it under a certificate of public convenience and necessity issued to respondent under certain orders made by the Public Service Commission of the State of Missouri, on said 24th day of February, 1925, and accepted by respondent and the said city of Sikeston, relator herein, and the said city of Sikeston, relator herein, is estopped from denying the right of respondent to operate in said city of Sikeston under said certificate of public convenience and necessity at this time."

In its return and answer respondent further alleged as additional grounds of estoppel that on or about December 27, 1924, it did under its then corporate name of Public Service Company of Missouri, pursuant to the terms and provisions of the Public Service Commission Law of this State, file three applications before the Public Service Commission of this State which were placed upon the commission's docket as commission cases numbered 4225, 4226 and 4241; that said cases were set down for hearing before said Commission on January 19, 1925; that the city of Sikeston was duly notified by said Commission of said hearing and was duly represented thereat; that in its application docketed as case 4225 respondent stated in substance that it desired to buy and Missouri Public Utilities Company (then owner of the properties) desired to sell certain utility properties mentioned or described in said application, including the electric property at Sikeston; that in its application docketed as case 4226 respondent stated in substance that it desired to sell securities and use the proceeds derived therefrom to pay for said properties, and prayed for an order authorizing it so to do; that in its application docketed as case 4241 respondent prayed for an order of the Commission authorizing it to operate and do business in said city of Sikeston and other places mentioned therein. Respondent further

alleged that after the hearing in said cases said Commission on February 24, 1925, entered orders therein "authorizing respondent to purchase the electric property at Sikeston (and other property), and to issue and sell its securities and execute a mortgage on its property, including the electric property at Sikeston, and to operate its electric property and to do business in the said city of Sikeston, Missouri," said orders being fully set forth in respondent's return and answer. Respondent also pleaded that the city of Sikeston, relator herein, accepted said orders and that "respondent has kept and performed all of the terms, provisions and conditions imposed upon it under said orders, and has continuously operated its electric property in the said city of Sikeston from said 24th day of February, 1925, up to the present time under the said certificate of public convenience and necessity issued to it on the said 24th day of February, 1925, by the said Public Service Commission as aforesaid, and that said certificate of public convenience and necessity authorizing respondent to operate its said electric property in said city of Sikeston is still in force."

As further grounds of estoppel and defense it is alleged in respondent's return and answer that pursuant to, and in good faith relying upon the above mentioned orders of the Public Service Commission and relator's acceptance thereof respondent paid out the sum of approximately $108,750 for its electric property located within the corporate limits of the city of Sikeston, and thereafter made net additions and improvements thereto in the city of Sikeston costing approximately the sum of $41,700; that pursuant to the authority granted to it under said orders respondent has issued and sold $2,185,000 principal amount of its six and one-half per cent ten-year first mortgage bonds, payment of which is secured by a mortgage on its property, including its electric property at Sikeston, all of which bonds are now outstanding; that pursuant to said orders respondent has in good faith issued and sold at par value, $400,000 face value, of its seven per cent cumulative preferred stock, all of which preferred stock was outstanding and held by the public at the time of the filing of the information herein; that pursuant to said orders respondent in good faith issued and sold to the Community Power & Light Company 20,000 shares of its no par value common stock for $537,000; that a substantial portion derived from the sale of said bonds and preferred stock was in good faith used by respondent in accordance with the terms and provisions of said orders of the Public Service Commission for the purpose of paying for its electric property in Sikeston, and that a removal of its said property in the city of Sikeston under an order or judgment entered herein would entirely destroy the value of said property amounting to approximately the sum of $150,000, and in addition thereto cause severance

damages to respondent's property at said city of Sikeston in the sum of approximately $50,000, and that there would thereby be taken from the owners and holders for value of the securities of respondent, their property which has been purchased in good faith and in reliance upon said orders of the Public Service Commission, in violation of Section 1 of the Fourteenth Amendment to the Constitution of the United States and in violation of Section 30 of Article II of the Constitution of Missouri.

In its answer and return respondent further alleges that it has with the acquiescence of the State of Missouri and of the said city of Sikeston, exercised its rights in distributing its electricity to said consumers in said city, openly and publicly evidenced by the public records of said State and of said city and its occupancy of the public streets of said city, continuously from on or about January 1, 1903, down to the date of the filing of relator's information herein, and has expended large sums of money and much effort in the faith of the validity of its right to operate in the public streets in the city of Sikeston under the aforesaid orders of the Public Service Commission, and has paid to the State, to Scott County and to the city of Sikeston, and to the schools of said city and county, taxes and other charges imposed upon it by the public authorities, including taxes upon its franchise rights and its right to do business in the said city of Sikeston from the year 1903 down to 1931, and has paid for and received a permit or license, under the terms, provisions and conditions set forth in the ordinances of said city of Sikeston, authorizing respondent to operate its electric property in said city to July 1, 1932.

█ "The rule must be considered settled that no person can acquire the right to make a special or exceptional use of the public highway, not common to all citizens of the state, except by grant from the sovereign power." [Jersey City Gas Co. v. Dwight, 29 N. J. Eq. 242, cited with approval in 4 McQuillin on Municipal Corporations (2 Ed.) sec. 1745, note 59, pp. 643, 644.] The power to grant franchises resides in the State and a city, in granting a franchise, acts as agent for the State. In an effort to prevent usurpation of such delegated power it is not improper for a municipality to be relator in a *quo warranto* proceeding. [State ex inf. v. Light & Development Co., 246 Mo. 618, 637, 152 S. W. 67.]

█ █ Under Sections 4962 and 7683, Revised Statutes 1929, municipal authorities may, under such delegated power, grant or refuse permission to electrical companies to place appliances in public ways within their corporate limits. [Realty & Power Co. v. St. Louis, 282 Mo. 180, 190, 221 S. W. 51.] However, the State as the sovereign power may condition the exercise of a privilege granted by one agency upon approval of another. Such was done in the

passage of the Public Service Commission Act, particularly instanced in the commission's authority to grant or withhold certificates of convenience and necessity requested by electrical corporations as provided in Section 72 (Laws 1913, pp. 610, 611), now Section 5193, Revised Statutes 1929, which is as follows:

"No gas corporation, electrical corporation or water corporation shall begin construction of a gas plant, electric plant or water system without first having obtained the permission and approval of the commission. No such corporation shall exercise any right or privilege under any franchise hereafter granted, or under any franchise heretofore granted but not heretofore actually exercised, or the exercise of which shall have been suspended for more than one year, without first having obtained the permission and approval of the commission. Before such certificate shall be issued a certified copy of the charter of such corporation shall be filed in the office of the commission, together with a verified statement of the president and secretary of the corporation, showing that it has received the required consent of the proper municipal authorities. The commission shall have the power to grant the permission and approval herein specified whenever it shall after due hearing determine that such construction or such exercise of the right, privilege or franchise is necessary or convenient for the public service. The commission may by its order impose such condition or conditions as it may deem reasonable and necessary. Unless exercised within a period of two years from the grant thereof authority conferred by such certificate of convenience and necessity issued by the commission shall be null and void."

Of the nature and scope of the certificate of convenience and necessity referred to in the above section, Judge McQuillin, himself a distinguished former member of the Public Service Commission of Missouri, says in his work on Municipal Corporations (2 Ed.) section 1768, vol. 4, page 703:

"Before action on the application for such a certificate, provision is made for a hearing thereon, and the commission after such hearing may issue the certificate or refuse to issue the same or may grant the application in whole or in part, and usually may attach to the exercise of the rights granted by the certificate, such terms and conditions as in its judgment the public convenience and necessity may require.

"It is not intended by this requirement to substitute a commission for the local or municipal authorities, when by the constitution and laws of the particular jurisdiction the consent of such local authorities is necessary before the grant of a franchise could be complete, because the constitution and laws contemplated that such local or municipal authorities shall have power to impose such reasonable conditions as the convenience and necessity of the locality may re-

quire, and with such conditions for the exercise of the franchise a commission has no concern. Therefore, it cannot demand that the local authorities add to or take from the conditions upon which they were willing to consent. The State, however by its commission, has power to say that no franchise shall be acquired or exercised unless it is necessary or convenient for the public service; and hence by virtue of such statutory grant of authority it may impose upon a corporation or individual before such a franchise can be exercised the obligation of satisfying the commission that the construction of the proposed plant for public service, or the exercise of the franchise or privilege thereunder is necessary or convenient for the public service. This is the single question presented to such commission. It is all it is authorized to determine. Such determination follows a hearing and is in its nature judicial.''

See, also, In re Kansas City Rys. Co., 3 Mo. P. S. C. 593, 619, wherein it is said:

''Consent having been acquired and the terms and conditions thereof having been fixed precisely, the State in the exercise of its undoubted police power, its unlimited supervision of public utilities. and its unrestrained regulation of their properties devoted to public service, reserves to itself the final word to say whether the exercise of the rights and privileges under the franchise by the grantee thereof will be promotive of the public convenience and necessity of the locality or localities in which they are to be exercised.''

As to electric corporations there is no constitutional requirement, as in case of street railways (Sec. 20, Art. XII, Constitution of Missouri), prohibiting the General Assembly from granting the right to operate within any city, town or village without first acquiring the consent of the local authorities. The requirement of municipal consent as to electric corporations is wholly statutory. Section 4962, Revised Statutes 1929, empowers certain corporations, including those formed under provisions of Article 7, Chapter 32, for the purpose of supplying cities, towns or villages with electricity, to furnish such commodity and place appliances necessary therefor along, across or under the streets, avenues and alleys thereof; and Section 7683, Revised Statutes 1929, provides that any city, town or village in this State may by ordinance authorize such corporation to exercise like privileges ''subject to such rules, regulations and conditions as shall be expressed in such ordinance.'' It is unnecessary for us to determine in this case the effect of possible conflict between the franchise requirements imposed by a municipality and conditions imposed by a public service commission in granting a certificate of convenience and necessity, because no such situation is presented. The distinction between a municipality's absolute right to refuse or grant a franchise and its right to impose obligations and conditions

in connection with a grant is clearly pointed out in St. Louis v. Public Serv. Com., 276 Mo. 509, 519-522, 207 S. W. 799; and we have not hesitated to sustain the commission's power to authorize rates in excess of and acts contrary to provisions contained in franchise agreements when the public welfare demanded such action. [City of Cape Girardeau v. Railway Co., 305 Mo. 590, 603, 267 S. W. 601.]

But Sections 4962 and 7683, supra, plainly make the consent of the municipality, in manner and form there indicated, an essential prerequisite to lawful exercise of the rights therein mentioned, and we find nothing in the Public Service Commission Act or in our decisions construing the same that lends any substantial support to respondent's suggestion that this statutory requirement has been repealed, or that the commission's grant of a certificate of public convenience and necessity is a grant of any privilege, franchise or right which municipalities, as agents of the State, are empowered to grant or withhold at their pleasure. As said in Bethlehem C. W. Co. v. Pub. Serv. Com., 70 Pa. Super. Ct. 499, 501:

"In granting a certificate of public convenience the commission confers no new chartered powers on any company. It takes away from no company any right or power then legally existing. As it is not a judicial body but an administrative one, its order, made from the standpoint of the public convenience solely, cannot be made the foundation for the judicial determination of what franchises do or do not belong to any corporation interested. Such matters must be determined as heretofore in a legal proceeding properly instituted in the courts for that purpose."

Also, in Wilson v. Publ. Serv. Com., 89 Pa. Super. Ct. 352, 358, 359, the court said:

"If an electric company, incorporated under or accepting the provisions of the Act of 1889, supra, does not for any reason possess the right of eminent domain, or does not procure when necessary proper municipal consent, the order of the Commission approving an application under the Act of 1921 does not and could not cure any such defect." [See, also, 51 C. J. p. 41, sec. 79, notes 67, 68, 69, 72, 73 and p. 52, sec. 95, notes 28, 29.]

So, even though relator has not questioned the commission's jurisdiction to make the order purporting to authorize respondent to operate its electric plant at Sikeston, which is referred to in respondent's return and answer as a certificate of public convenience and necessity, yet the effect of such order could not extend beyond the scope of the commission's power in the particular proceeding culminating therein, which was to determine the single question of whether the proposed exercise of the right, privilege or franchise was "necessary or convenient for the public service." This order did not

confer any new powers upon respondent. It simply permitted respondent to exercise the rights and privileges presumably already conferred upon it by state charter and municipal consent. *Quo warranto* is a direct proceeding (State ex inf. v. Colbert, 273 Mo. 198, 209, 201 S. W. 52) in which it may be determined whether or not such rights and privileges have in fact been conferred. The final orders and decisions of the commission are conclusive only as against collateral actions or proceedings. [Sec. 5238, R. S. 1929.]

Even so, counsel for respondent contend that by reason of relator's acts and conduct pleaded and hereinabove stated the city of Sikeston is estopped to say that it has not lawfully conferred such rights and privileges upon respondent, and by its own laches is precluded from relief in this proceeding.

While laches is an equity doctrine it is frequently applied to municipal corporations in *quo warranto* proceedings. In State ex rel. Brown v. Town of Westport, 116 Mo. 582, 22 S. W. 888, it was held that after twelve years from the organization of a city, and continued recognition of its existence by the courts and the State during that time, *quo warranto* proceedings could not be instituted by the State to oust the municipality and its officers of their franchises because of irregularity in its organization, the State having been guilty of laches in waiting so long. This case is cited in State ex inf. Attorney-General v. Arkansas Lumber Co., 260 Mo. 212, 284, 169 S. W. 145. In State ex inf. Attorney-General ex rel. Harrington v. School Dist. of Lathrop, 314 Mo. 315, 332, 284 S. W. 135, the doctrine of laches was applied in *quo warranto* proceedings challenging authority of a town school district over common school districts joined to it in an unauthorized manner, where proceedings were not instituted until eight years after such extension.

Estoppel is a preclusion in law which prevents one alleging or denying a fact in consequence of his own previous act, allegation or denial of a contrary tenor. [Hodde v. Hahn, 222 S. W. 799, 283 Mo. 320, 329.] "Equitable estoppel, or estoppel *in pais*, is that condition in which justice forbids that one speak the truth in his own behalf." [DeLashmutt v. Teetor, 169 S. W. 34, 261 Mo. 412, 440.] It "stands simply on a rule of law which forecloses one from denying his own expressed or implied admission which has in good faith and in pursuance of its purpose been accepted and acted upon by another." [McFarland v. McFarland, 211 S. W. 23, 278 Mo. 1, 16.] To constitute estoppel *in pais*, three things must occur: First, an admission, statement, or act inconsistent with the claim afterwards asserted and sued on; second, action by the other party on the faith of such admission, statement or act; and, third, injury to such other party, resulting from allowing the first party to contradict or repudiate such admission, statement, or act. [Bramell v.

Adams, 47 S. W. 931, 146 Mo. 70, 82, 83; Bank v. Ragsdale, 171 Mo. 168, 185, 71 S. W. 178; Commerce Trust Co. v. Keck, 223 S. W. 1057, 283 Mo. 209, 223; Pollard v. Ward, 233 S. W. 14, 289 Mo. 275, 286; Grafeman Dairy Co. v. Northwestern Bank, 235 S. W. 435, 290 Mo. 311, 335; Vette v. Hackman (Mo.), 292 Mo. 138, 237 S. W. 802, 805.] While the doctrine of equitable estoppel is not generally applicable to municipal corporations in matters pertaining to governmental functions, yet courts, with much caution, may apply the doctrine in exceptional cases where upon all the circumstances of the case right and justice require it. [Peterson v. Kansas City, 23 S. W. (2d) 1045, 324 Mo. 454; State ex rel. Nolen v. Nelson, 275 S. W. 927, 310 Mo. 526, 541; City of Mountain View v. Farmers Telephone Exchange Company, 243 S. W. 153, 294 Mo. 623, 637; City of St. Joseph v. Railroad Co., 268 Mo. 47, 55, 186 S. W. 1080; Town of Montevallo v. Village School District of Montevallo, 186 S. W. 1078, 268 Mo. 217, 223; Simpson v. Stoddard County, 173 Mo. 421, 463, 73 S. W. 700; School Dist. v. Correll, 286 S. W. 136, 220 Mo. App. 322, 330; State of Iowa v. Carr, 191 Fed. 257, 267, 268; Spokane v. Spokane Falls, 33 Pac. 1072; City of Bradford v. Tel. Co., 56 Atl. 41, 42; 4 McQuillin on Municipal Corporations (2 Ed.) sec. 1818, p. 821, et seq.]

■ ■ Where relator in a *quo warranto* proceeding challenges the sufficiency of respondent's return and moves for judgment on the pleadings, as was done in this case, the facts pleaded in the return must be taken as the facts in the case. [State ex inf. v. Merchants' Exchange, 269 Mo. 346, 354, 355; 190 S. W. 903.] It thus appears that from November 16, 1922, the date of the expiration of the twenty-year franchise granted by the city of Sikeston to the Sikeston Electric Light Company, until July 15, 1931, the date of the passage of relator's resolution directing respondent to vacate the city streets, avenues and alleys, and discontinue its electric business in said city, respondent and its immediate predecessors have constructed and maintained therein necessary electrical equipment and furnished electric service to the public in the city of Sikeston without any objection whatever on the part of said city; that during such period of nearly nine years, and for many years prior thereto, said city each year levied, assessed and collected taxes on respondent's property in said city, and each year collected a license tax on respondent's right to engage in the electric business in said city and issued a license or permit to respondent authorizing it to engage in such business therein, respondent's last license or permit extending to July 1, 1932; that during said period and for many years prior thereto the State of Missouri levied and collected from respondent and its predecessors a state franchise tax; that having pursued this course of acquiescence and consent for more than two years with

respondent's immediate predecessor, relator appeared and was represented at the hearing before the Public Service Commission when respondent requested and received the Commission's orders approving its purchase of said electric property and its issuance of stocks, bonds and other forms of indebtedness thereon as provided in Sections 5194, 5195 and 5196, Revised Statutes 1929, and requested and received the Commission's certificate of convenience and necessity and approval of its right to engage in the electric business in said city; that said city accepted said orders of the Commission, and for more than six years thereafter respondent continued to operate its electric property in said city under said orders without any objection on the part of said city.

Bearing in mind that counsel for respondent do not contend that at the expiration of the period fixed by a franchise from a city to a utility the city may not order the utility off the streets, or that at the expiration of the term such franchise rights of the utility do not cease, or that by continuing service alone the utility would acquire any renewal rights, we think it is clearly in accord with right and justice and in harmony with the weight of authority above indicated to hold, as we do, that in the circumstances hereinabove stated the doctrines of laches and estoppel apply, and relator will not now be heard to say that respondent is without right or authority to engage in the electric business in the city of Sikeston and have reasonable use of its streets, avenues and alleys in connection therewith. The rule applied in City of St. Joseph v. Railroad Company, 268 Mo. 47, 56, 186 S. W. 1080, is applicable here and is there stated as follows:

"The city stood by and encouraged the defendant in the expenditure of more than one-half million dollars, all to the city's benefit and up-building. The city stood silently by until this property was mortgaged to secure its bonds, and until those bonds were in the hands of innocent parties. For the city to win would be to destroy the security of these bonds. To permit the city by a recovery in this suit to destroy defendant's valuable property is inequitable in the strongest and strictest sense. The public rights should not be allowed to destroy vast private rights under the peculiar facts we have here. There are many cases where public rights, through the doctrine of equitable estoppel, have been forced to give way to the more equitable rights of private parties."

As said in State of Iowa v. Carr, 191 Fed. 257, 267, 268:

"The owner of a known right or title may by his representations, acts or silence so lead another to act in the belief that the owner has waived, surrendered or abandoned his right or title that he will be estopped from asserting it to the injury of him who has changed his position in reliance upon the owner's representations, acts or silence."

In Spokane Street Ry. Co. v. City of Spokane Falls, 33 Pac. 1072, it was held that payment of taxes was a ground of estoppel. Also, in City of Bradford v. Tel. Co., 56 Atl. 41, 43, it was held that the city was estopped to deny the rights of defendant company to operate within the city because, among other things, the city ''had received and duly receipted for license and poll taxes assessed against the defendants.'' Cases cited by counsel for relator in opposition to the principles hereinabove stated are distinguishable from this case on the facts presented.

■ However, it should be remembered that an estoppel does not itself give a cause of action, its purpose being to preserve rights already acquired and not to create new ones. [McLain v. Mercantile Trust Company, 237 S. W. 506, 292 Mo. 114; Berry v. Mass. Bonding & Ins. Co., 221 S. W. 748, 203 Mo. App. 459; Schick v. Rehkop (Mo. App.), 237 S. W. 209.] An equitable estoppel cannot arise unless justice to the rights of others demands, its office being not to work a positive gain to a party, but to protect him from a loss which he could not otherwise escape, and hence should be limited to what is necessary to put the parties in the same relative position they would have occupied if the predicate of the estoppel had never existed. [State ex rel. Moss v. Hamilton, 260 S. W. 466, 303 Mo. 302.]

We refrain from discussing other interesting questions suggested by able counsel for both relator and respondent for the reason that we deem the foregoing dispositive of the case. As well said in People ex rel. v. Willcox, 196 N. Y. 212, 217, 218: ''The Public Service Commission law is an advanced step in legislation of great importance to the community. The construction and application of its provisions necessarily involve questions of difficulty. It is wise, therefore, in each case which arises under the statute to take great care to go no further in the expression of judicial opinion than is requisite for the decision of the precise issue presented.'' However, it is not inappropriate to suggest that relator's claim that there now exists no public necessity for the continuance of the electrical service supplied by respondent, first mentioned in relator's resolution of July 15, 1931, and vigorously urged in this proceeding, is a matter peculiarly within the jurisdiction of the Public Service Commission.

For the reasons above stated ouster is denied and the proceeding dismissed. All concur.