GEORGE H. BROWN ET AL. v. SAM B. BROWN ET AL., Appellants.—
146 S. W. (2d) 553.

Division One, January 4, 1941.

*Ashby & Banta* for appellant.

*Eugene L. McGee* and *R. F. Baynes* for respondents.

HAYS, J.—In this action respondents (plaintiffs below) seek to partition certain real estate in New Madrid County. Plaintiffs claim interest in the land involved as heirs at law of George H. Hancock, deceased. Appellant Bertha Conyers was not originally a party, but sought and was granted leave to intervene. In her intervening petition and the answer which she filed she sets up a claim to an undivided one-half interest in a portion of the lands, partition of which is sought by the plaintiffs, basing her claim upon a quitclaim deed from Mary Elizabeth Hancock, now deceased, widow of George H. Hancock. Plaintiffs, replying to the answer of intervener, deny this claim and thus put title in issue.

George H. Hancock died seized in fee simple of all of the lands involved. He was survived by his widow Mary Elizabeth Hancock, who has since died, and by the plaintiffs and the original defendants, who are his collateral kindred and sole heirs at law. George H. Hancock had no children or descendants of children living at the time of his death.

For sometime before Hancock's death he and his wife were in a weakened physical condition. Intervener had lived with and cared for them, and had also cared for Mrs. Hancock after her husband died. It is alleged and the evidence tends to show that Mr. Hancock orally promised intervener that if she continued to care for him and his wife she would be paid for what she did "out of the land;" and Mrs. Hancock, after her husband's death, promised intervener that if she continued to take care of her, the lands which intervener now claims would be conveyed to her. Note, however, that intervener does not pray for the specific performance of any such alleged contracts.

Within two months after the death of George H. Hancock, his widow executed a paper writing purporting to be an election to take one-half of the real and personal property of her husband in lieu of dower. This paper was prepared by an attorney who was representing one of the collateral heirs who had been appointed administrator of the George H. Hancock Estate. More than a year after George H. Hancock's death this paper was filed with the probate court. It was never recorded with the Recorder of Deeds. Sometime after the paper above spoken of was filed with the Probate Court,

Mrs. Hancock gave to the intervener a quitclaim deed to the former's supposed "undivided one-half interest" in the portion of the lands involved in intervener's answer. In this deed Mrs. Hancock reserved for herself a life estate.

One of the original defendants, Sam B. Brown, testified that he was present when the election was filed and that he was also present when the quitclaim deed to intervener was executed and delivered to her. He also said that at several different times he heard Mrs. Hancock say that she was going to give this land to the intervener. He also mentioned to one of his brothers the fact that Mrs. Hancock intended to make the gift of these lands, to which his brother replied that Mrs. Hancock had no interest therein which she could convey.

This defendant Sam B. Brown, who is administrator of George H. Hancock's estate, filed certain settlements in the Probate Court showing that he had paid to the widow her statutory allowances and thereafter had distributed to her one-half of the personal estate, dividing the other half among the heirs. It is not shown that this distribution of personal property was objected to by any of the heirs.

Intervener concedes that her sole title, if any, comes through the quitclaim deed from Mary Elizabeth Hancock. She also admits that the attempt made by Mrs. Hancock to elect to take a one-half interest in the property of her deceased husband was ineffectual unless aided by the alleged estoppel hereafter referred to, because of her failure to comply with the mandatory provisions of our statutes with reference to the filing of such election and its recordation in the deed records of the county. [Secs. 318, 325, 327, 329, R. S. Mo. 1929; Ferguson v. Long, 341 Mo. 182, 107 S. W. (2d) 7; McLain v. Mercantile Trust Co., 292 Mo. 114, 237 S. W. 506; Castleman v. Castleman, 184 Mo. 432, 83 S. W. 757; Allen v. Harnett, 116 Mo. 278, 22 S. W. 717.] She contends, however, that the heirs of George H. Hancock are estopped from denying that such election was duly made. [Cf. Wyatt v. Wilhite, 192 Mo. App. 551, 183 S. W. 1107; McLain v. Mercantile Trust Co., supra; Ferguson v. Long, supra.]

"To constitute an estoppel *in pais,* three things must concur: first, an admission, statement or act inconsistent with the claim afterwards asserted and sued on; second, action by the other party on the faith of such admission, statement or act; and, third, injury to such other party resulting from allowing the first party to contradict or repudiate such admission, statement or act." [The McLain case, supra, 292 Mo. 114, l. c. 123, 237 S. W. 506, l. c. 508; First National Bank of Mexico v. Ragsdale, 171 Mo. 168, l. c. 185, 71 S. W. 178, l. c. 182, and cases cited.]

It is not claimed that any of the heirs in this case made any actual positive statement to intervener as to the existence of an election by the widow. If any such representation exists it is a

purely constructive one, growing out of the silence of the heirs and their tacit assent to the distribution of one-half of the personal property to Mrs. Hancock. That it is possible for a party to be estopped because of his mere silence as distinguished from his active representation is well established law. [Peery v. Hall, 75 Mo. 503; Kirk v. Hamliton, 102 U. S. 68, 26 L. Ed. 79.] On the other hand, as we have said in the case of Anthony v. Midwest Live Stock Commission Co. (Mo.), 260 S. W. 94, l. c. 98: "Silence, in special circumstances, may work an estoppel, but there must be both an opportunity and a duty to speak before this is so (many authorities are cited), and the opposite party must have been misled and influenced to act to his prejudice by the failure to speak. [Several cases cited, including Davis v. Lea, 293 Mo. 660, 239 S. W. 823.]" Moreover, we have held that "estoppel, even when pleaded (as in the present case), does not in itself give a cause of action, and that its purpose is to preserve rights already acquired and not to create new ones. . . ." [McLain case, supra, 292 Mo. l. c. 122, 237 S. W. l. c. 508.]

In the instant case the facts in regard to the filing of this election were not within the peculiar knowledge of the heirs. They were matters of public record as easily accessible to intervener as to any of the other interested parties, and there is no evidence at all that the heirs actually knew that the purported election had not been filed in time or recorded. It was as much the duty of the intervener as of any of the heirs to consult the record in this connection. The basis of an estoppel is therefore wholly lacking. [Burke v. Adams, 80 Mo. 504, 50 Am. Rep. 510; Grafeman Dairy Co. v. Northwestern Bank, 290 Mo. 311, 235 S. W. 435; Wilkinson v. Lieberman, 327 Mo. 420, 37 S. W. (2d) 533; Rhoads v. Rhoads, 342 Mo. 934, 119 S. W. (2d) 247.] This being true, it is clear that Mrs. Hancock had nothing more than a dower interest in the lands she attempted to convey. This, of course, was a mere life estate which ended at the moment of her death, and her attempt to convey an estate to come into existence after her death was of no effect. Intervener took under the quitclaim deed no interest in these lands and has no interest therein. The judgment of the trial court in favor of the original plaintiffs and against the intervener must therefore be affirmed. It is so ordered. All concur, except *Clark, J.,* absent.