Henry EMERY, Appellant,

v.

BROWN SHOE COMPANY, Inc., a
Corporation, Respondent.

No. 44806.

Supreme Court of Missouri.
Division No. 1.

March 12, 1956.

Elmer M. Gaskill, William L. Mason, Jr., St. Louis, for appellant.

William G. Pettus, Jr.; Shepley, Kroeger, Fisse & Shepley, St. Louis, for respondent.

DALTON, Presiding Judge.

Action under the federal Fair Labor Standards Act of 1938, 52 Stat. 1060, 29 U.S.C.A. § 201 et seq. to recover unpaid overtime compensation, liquidated damages and attorney fees in the sum of $46,434.00, exclusive of interest and costs. From a judgment dismissing plaintiff's petition with prejudice, plaintiff has appealed.

Plaintiff's amended petition alleged that plaintiff was employed by defendant to operate motor trucks transporting goods in interstate commerce between Missouri and other states of the United States; that defendant was engaged in the production of goods for commerce within the meaning of the federal Fair Labor Standards Act of 1938, to wit, the manufacture of shoes for sale and shipment in interstate commerce; that plaintiff's employment was subject to the Fair Labor Standards Act; that he performed overtime work for defendant in this employment between October 22, 1938 and May 30, 1945; that said Act required the payment of time and one-half for such overtime; and defendant was lawfully obligated to pay him wages and did pay him

wages at the rate of $1 per hour, but that defendant had failed to pay him overtime compensation as required by said Act. Plaintiff asked judgment for the amount of the unpaid overtime and liquidated damages in an amount equal to the unpaid overtime compensation, together with interest, attorneys' fees and costs.

Defendant's answer admitted that, at all times mentioned in the petition, it was engaged in the production of goods for commerce within the meaning of the federal Fair Labor Standards Act of 1938; that the provisions of said Act relating to overtime compensation became effective on or about October 22, 1938; that plaintiff was an employee of the defendant at all times mentioned and drove and operated motor trucks transporting goods for commerce between the state of Missouri and other states; and that defendant had refused to pay plaintiff any overtime compensation. Defendant denied that any overtime compensation was due or that plaintiff's employment was covered by the federal Fair Labor Standards Act of 1938. Defendant alleged that "Section 207 of the Fair Labor Standards Act of 1938 is the section establishing maximum hours of work for persons whose employment is covered by the Act"; that Section 213(b) of said Act provides that Section 207 "shall not apply with respect to any employee with respect to whom the Interstate Commerce Commission has power to establish qualifications and maximum hours of service pursuant to the provisions of section 304 of Title 49"; that Section 304(a) (3) of 49 U.S.C.A. gives the Interstate Commerce Commission the power and duty to establish for private carriers of property by motor vehicle qualifications and maximum hours of service of employees; that the "defendant is, and was at all times mentioned in said Amended Petition, a private carrier of property by motor vehicle, as defined in Section 303(a) (17) of said Title 49"; and that "by virtue of the foregoing, the maximum hours of service of plaintiff were not governed by the Fair Labor Standards Act of 1938."

In his reply plaintiff alleged that "defendant is estopped from asserting, in this action; that it is and was a private carrier of property by motor vehicle as defined in Section 303(a) (17) of Title 49 U.S.C.A. * * * and is estopped from asserting, in this action, that by virtue of the provisions of the said Section the maximum hours of service of plaintiff were not governed by the Fair Labor Standards Act of 1938." The grounds alleged as a basis for the estoppel pleaded will be set out subsequently.

On joint oral motion of the parties, it was ordered by the court that a separate jury waived trial be had, in accordance with the provisions of Section 510.180(2) RSMo 1949, V.A.M.S., on the issue of whether or not defendant was estopped from asserting the affirmative defense contained in its answer. It was stipulated that the issue to be determined was not whether defendant was a private carrier, but whether or not defendant was estopped from asserting it was a private carrier. It was further stipulated and agreed between the parties that plaintiff's employment falls within the exemption contained in Section 213(b) of the Fair Labor Standards Act, as alleged in defendant's answer, and plaintiff is not entitled to recover, unless the defendant is estopped, as stated in plaintiff's reply, from asserting its said affirmative defense. Accordingly, the issue of estoppel was separately tried to the court without the aid of a jury. At the close of plaintiff's evidence on this issue, defendant declined to offer any evidence and moved for judgment dismissing plaintiff's petition with prejudice on the ground that plaintiff's evidence failed to support the estoppel pleaded. The court sustained defendant's motion and, thereafter, dismissed plaintiff's petition with prejudice. Section 510.140 RSMo 1949, V.A.M.S.

Appellant here contends that the court erred in sustaining defendant's motion for judgment and in dismissing plaintiff's petition with prejudice.

As grounds for the estoppel, the plaintiff alleged: that defendant's business was as admitted; that defendant was not a bona fide motor carrier of any sort, within the meaning of Section 303(a) (17) of 49 U.S.

C.A. or any other federal act or regulation; that prior to February 15, 1940, defendant had all of its motor carriage done for it by Ben Gutman Truck Service, Inc., a corporation, a contract carrier; that said corporation owned and controlled the trucks and employed the drivers; that prior to said date the Interstate Commerce Commission had power to regulate the hours of work of drivers for private carriers of property by motor vehicle, prescribe safety regulations and require reports, but it had not acted to exercise any of its said powers; that by reason of such failure to act bona fide private carriers as employers could work their drivers such hours as they chose, pay them what they chose, furnish such employment as they chose and make no reports to the Commission; that on February 15, 1940, to nullify the public policy of the Fair Labor Standards Act and the Interstate Commerce Act, "defendant leased from the said Ben Gutman Truck Service, Inc., the trucks which had theretofore performed motor carriage for defendant (as well as other trucks), and accepted driver-employees of said Ben Gutman Truck Service, Inc., including this plaintiff, as defendant's employees, and defendant did then and thereafter proceed to ostensibly and supposedly operate as a private carrier of property within the meaning of federal law, though the actual maintenance and service of the said trucks, and the actual control and direction of the said employees, remained with the said Ben Gutman Truck Service, Inc."; that said lease constituted an attempt by the employer to contract away the rights of its employees under the Fair Labor Standards Act; that, by reason of the public policy of the United States expressed in said Acts hereinbefore referred to, "said lease and said ostensible and supposed status of defendant as a private carrier by motor vehicle were and are null, void, and of no force or effect as to plaintiff in this action"; that, effective October 15, 1940, "the Interstate Commerce Commission, under said Part II of said Interstate Commerce Act, did establish rules and regulations for private carriers of property by motor vehicle; that said rules and regulations prescribed maximum hours for driver-employees of said private carriers and required reports to the Interstate Commerce Commission as to hours worked by same from said private carriers; but that defendant, from and after said 15th day of October 1940, and at all times thereafter mentioned in plaintiff's said petition, though supposedly and ostensibly operating as a private carrier by motor vehicle, consistently violated the said rules and regulations of the Interstate Commerce Commission in that it worked its driver-employees over said maximum hours during all of said period, and did not make reports of the hours worked for it by said driver-employees to the Interstate Commerce Commission during any of said period"; and that by reason of said premises, defendant is estopped from asserting or relying on its affirmative defense.

In support of the allegations of his reply, the plaintiff offered in evidence a contract dated February 15, 1940, by which the Brown Shoe Company leased certain described motor vehicles and equipment from the Ben Gutman Truck Service, Inc., a corporation, for the exclusive use of the Brown Shoe Company in the transportation of its own products and property. The lessor agreed to maintain the vehicles and at its own expense, furnish such licenses in the name of the lessee "as may be required by any municipality, state or federal authority for the operation of said motor vehicles," pay all taxes, furnish gasoline, oil, tires and accessories, keep the vehicle and merchandise insured against designated perils and carry liability insurance as therein provided. The lessee was to pay such rentals as therein provided, based upon round trip rates to various named towns in Missouri, Illinois and Indiana.

Plaintiff testified that about 1938 he went to work for Brown Shoe Company as a highway driver and worked until May 1945; that he was hired by Ben Gutman and fired by Ben Gutman and Gutman's foreman, Leonard Vohsen; that his pay checks were made out every week by Brown Shoe Company, but some one at Ben Gutman's garage would deliver the checks to him; that he

thought "the hourly rate * * * was considered a dollar an hour," but that "they had no hourly rate, we worked on trip * * * we got so much a trip * ' * you got so much for going to a certain place no matter how long it taken you, you didn't get paid by the hour at all." Later, plaintiff said there was an hourly rate; that he was allowed forty hours vacation and on that basis the rate of pay "would be a dollar an hour." "It didn't make any difference; you still drawed the same pay whether you were gone six hours or twenty hours, you still got the same amount for the same trip * * * and each trip paid a different amount. * * * I imagine it was set up as to time and distance, but if we was gone longer, you didn't get no more pay for it. If you would get out and break down and was out sixteen hours, fourteen hours, you still got * * * whatever the scale was set up for."

Plaintiff would report to the Ben Gutman Company place in St. Louis at 4:00 p. m. and his work would be assigned by Gutman's superintendent, Leonard Vohsen, who would give a trip sheet showing where plaintiff was to go in Illinois or Indiana. Plaintiff received no instructions concerning his work from anyone from the Brown Shoe Company and during the whole time he worked for Brown Shoe Company he was under the supervision and control of Ben Gutman Trucking Service. He made out his trip sheets (Interstate Commerce Commission Reports) after every trip. They were made out under the direction of Leonard Vohsen. Plaintiff said: "I never made one out right all the time I made them out." The reports were on a form referred to as "a driver's daily log." He signed them under the words "I certify these entries are true and correct," but he "never made one out right; you couldn't." It was supposed to show every hour spent on the road. The reason he made them out wrong was because "Well, on most of your runs you couldn't make the run and make them out right because it would take you more time than the time that you was allowed on the I.C.C. And if you did make

them out right, then you was in trouble with the I.C.C. and you would get fired on top of it." As to the time allowed by the I.C.C., he said: "Well, it is figured on ten hours of driving. I think you are allowed ten hours and then you have to be off eight, and then you can drive another ten hours. And some of the trips that we made took us way longer than ten hours, which therefore you couldn't make them out right. * * * if you went four hundred and forty-four miles and it took you sixteen hours or eighteen hours to make it, you couldn't put it on them tickets because then you would be in trouble and the company would have fired you anyhow." If he had made the reports correct and showed over ten hours driving, he would have shown violation of the Interstate Commerce Commission regulations.

He had no personal agreement with the Brown Shoe Company, he depended on the union. He was not familiar with the union contract. He didn't know whether he was working under a union contract fixing the rate of pay for employees in this driver unit. He said: "I wouldn't know; I guess I was." He didn't know anything about whether "Brown had a contract with the union with reference to" his pay—only "I went to work and drawed my pay and that is all * * * I don't know how they determined the amount." He made no inquiry, but simply accepted what he was given each time. He guessed it was the union rate, he belonged to the union. He didn't know whether the rate was determined by the union. "I imagine they had a contract because I was a union man and they paid me so much for each run." He never complained to his union that "the runs took longer than the time allowed by I.C.C. rules, he imagined they knew it." He assumed the union contract called for so many hours on a certain run. While he worked he averaged at least 70 hours per week and lots of times more, he never discussed the union contract with either Ben Gutman or Brown Shoe Company. The trips were "bound to be set up on an hourly rate." Under either normal or abnormal conditions it took longer than the

time set; since "you couldn't drive a pleasure car, the round trip in the time they gave you to drive a tractor-trailer." You "got paid for whatever the trip called for" and not for the time "you was gone."

Another witness, Baggett, during 1941 to 1944, did over-the-road driving as chauffeur and truckman, between Indiana, Arkansas, Illinois and Missouri, hauling only Brown Shoe Company material. He said he was paid by both Gutman and the Brown Shoe Company; that he was under the direction of Leonard Vohsen, superintendent of drivers for Gutman; that he presumed he had a 40 hour week, but he worked 70 to 90 hours per week and did not make out his driving time reports correctly. He made the report incorrectly under the orders of Leonard Vohsen. If you had refused to do so, "you would have gotten fired or you would have stayed on short enough trips that you wouldn't have stayed on." He further said: "I don't know who I was working for." A witness, Dees, said he was employed by the Brown Shoe Company in hauling material from 1940 to 1942; that he reported to Gutman's garage and got his orders direct from Leonard Vohsen, superintendent; that the "log books" he made out at the direction of Gutman, in most instances, did not correctly represent the time spent on the road; and that the log books, as he made them out, did not conform to the time indicators and regulators on the trucks and Gutman said everything would be all right—the records would never be shown.

■ As stated, the sole issue presented to the trial court, and the issue upon which the cause turns, is whether or not defendant is estopped to assert that it was a private carrier and within the exclusion provided by Section 213(b) of the Fair Labor Standards Act. This issue was submitted on plaintiff's evidence. The court found "that defendant is not estopped from asserting (the) defense that at all times mentioned in the amended petition it was a private carrier, as defined in Section 303(a) (17) of Title 49 U.S.C.A." Pursuant to this finding and the stipulation filed, the court thereupon sustained defendant's mo-

tion for judgment and the amended petition was dismissed with prejudice. Appellant "concedes that if Section 213(b) *can be relied on* by defendant, then he has no case." (Italics ours.) The issue of "whether or not defendant is estopped from asserting the affirmative defense" having been tried to the court without the aid of a jury, the case is reviewable in this court upon both the law and the evidence as in suits of an equitable nature. Harbin v. Schooley Stationery & Printing Co., 362 Mo. 1118, 247 S.W.2d 77, 79. This court, however, may not set aside the judgment "unless clearly erroneous," and "due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." Section 510.310(4) RSMo 1949, V.A.M.S.

"Estoppels are of three kinds; (1) By record, (2) by deed, and (3) by matter in pais. The first two are sometimes referred to as technical estoppels as distinguished from equitable estoppels or estoppels in pais." 19 Am.Jur., Estoppel, Section 3, p. 601. Appellant relies upon estoppel in pais or equitable estoppel to bar the defense interposed by defendant to plaintiff's claim for overtime compensation. Appellant's theory is that "even if defendant's operations were actually those contemplated by the Motor Carrier Act for a private carrier as defined in said act, and hence a real affirmative defense to coverage under the Fair Labor Standards Act, defendant cannot be heard to assert, or allowed to prove said defense" because, as between plaintiff and defendant, the defendant is estopped to rely on said defense.

■■ " 'Equitable estoppel, or estoppel in pais, is that condition in which justice forbids that one speak the truth in his own behalf.' De Lashmutt v. Teetor, 261 Mo. 412, 440, 169 S.W. 34, 41. It 'stands simply on a rule of law which forecloses one from denying his own expressed or implied admission which has in good faith and in pursuance of its purpose been accepted and acted upon by another.' McFarland v. McFarland, 278 Mo. 1, 16, 211 S.W. 23, 27. To constitute estoppel in pais, three things must occur: First, an admission,

statement, or act inconsistent with the claim afterwards asserted and sued on; second, action by the other party on the faith of such admission, statement, or act; and, third, injury to such other party, resulting from allowing the first party to contradict or repudiate such admission, statement, or act." State ex inf. Shartel ex rel. City of Sikeston v. Missouri Utilities Co., 331 Mo. 337, 53 S.W.2d 394, 399(9–11), 89 A.L.R. 607; Brown v. Brown, 347 Mo. 45, 146 S.W.2d 553, 554; Prouse v. Schmidt, Mo.Sup., 156 S.W.2d 919, 921; Waugh v. Williams, 342 Mo. 903, 119 S.W.2d 223, 226.

Appellant cites Atlantic Nat. Bank of Jacksonville, Fla. v. St. Louis Union Trust Co., 357 Mo. 770, 211 S.W.2d 2, 9, in support of his contention that such estoppel will bar a defense. It is there stated: "Estoppel by conduct applies to such conduct as precludes one from prosecuting a meritorious action or *making a true defense as against one who in reliance upon such conduct has changed his position.*" (Italics ours.)

■ Estoppel in pais is an affirmative defense and it has been pleaded as such. Section 509.090 RSMo 1949, V.A.M.S. The burden of proof to establish the estoppel pleaded and every essential element thereof rested upon the party pleading it. Sutorius v. Mayor, 350 Mo. 1235, 170 S.W. 2d 387, 397, 171 S.W.2d 69; Linville v. Ripley, 347 Mo. 95, 146 S.W.2d 581, 583 (7, 8).

■ It is an *essential element of equitable estoppel that the person asserting the estoppel shall have changed his position for the worse in reliance upon representations or conduct of the person sought to be estopped.* Sutorius v. Mayor, supra; Prouse v. Schmidt, supra, 156 S.W.2d 919, 921. To work an equitable estoppel, the person claiming the benefit of the estoppel must have been misled into such action that he will suffer injury if the estoppel is not declared. State ex rel. Moss v. Hamilton, 303 Mo. 302, 260 S.W. 466, 470; Missouri Cattle Loan Co. v. Great Southern Life Ins. Co., 330 Mo. 988, 52 S.W.2d 1, 11.

"No one should be denied the right to set up the truth unless it is in plain contradiction of his former allegations or acts." Sutton v. Dameron, 100 Mo. 141, 151, 13 S.W. 497; Noell v. Remmert, 326 Mo. 148, 30 S.W.2d 1009, 1015; 21 C.J. 1139, Sec. 139; 31 C.J.S., Estoppel, § 77.

■ Appellant argues that "defendant's scheme and manner of operation was against public policy, because the same was designed to thwart, and did evade, the intents and purposes of both the Fair Labor Standards Act and the Motor Carrier Act"; that "defendant provided neither equitable working conditions, nor fair wages"; that "this lease was a mere sham and pretense * * * Gutman retained possession and control of the trucks involved and directed all of their movements and those of their drivers, including plaintiff"; and that "defendant consistently violated the provisions of the very law it relied on to bring it out from under the Fair Labor Standards Act, because it utterly disregarded the Interstate Commerce Commission regulations promulgated under the Motor Carrier Act."

If we assume, without deciding, that plaintiff's evidence clearly and definitely established these facts, it does not follow that, as between plaintiff and defendant, the defendant is estopped to plead and prove the true facts, to wit, that plaintiff's employment was under the exclusion provided by Section 213(b) of the Fair Labor Standards Act, relating to employees within the jurisdiction of the Interstate Commerce Commission. Appellant was not deceived or misled to his injury and damage in any manner whatsoever. He relied upon no statement or representation of defendant to his damage. At all times mentioned he knew who he was working for, he knew exactly what type and kind of work he was doing and who was paying him. He knew who was giving all orders and directions. He knew that he was subject to maximum hours of service as established by the Interstate Commerce Commission pursuant to the provisions of Section 304 of Title 49, Section 304(a) (3) of 49 U.S.C.A. (the Motor Carrier Act). He regularly

made out the trip reports to the Interstate Commerce Commission and he knowingly, intentionally and falsely reported the driving time spent in his work. Whether the reports were true or false, and whether or not they were so required by defendant is not material to the issue presented. The evidence tends to show that false reports were made to secure and retain employment and get longer trips. At all times plaintiff reported his own time and knew what his pay was to be and he received his compensation without complaint. There is no evidence that he changed his position for the worse or to his detriment in any respect whatever in reliance upon any representation or action of defendant. On the facts shown there is no estoppel to prevent defendant from proving the defense pleaded. As between plaintiff and defendant there is no estoppel.

There is a further reason that appellant is not entitled to prevail on the issue presented. As stated, appellant admits that if Section 213(b) of the Fair Labor Standards Act "can be relied on by defendant, then he has no case." As a witness plaintiff admitted that all during his employment he was required to make and did make reports to the Interstate Commerce Commission dealing with his hours of service in his employment for defendant. It is true that he testified concerning violation of the ten hour rule and that he constantly falsely certified his hours on the road or driving time, but there is no suggestion that he was ever misled or ever caused to believe he was entitled to overtime compensation or that he was not working in an employment as to which the Interstate Commerce Commission had power to establish qualifications and maximum hours of service. It therefore appears that on the record presented, he is trying to use equitable estoppel "as a sword" and not "as a shield." He seeks to use estoppel to collect time and one-half compensation for overtime, which compensation, except for the alleged equitable estoppel, he admits that he cannot collect and is not legally entitled to receive.

The rule is that "an estoppel does not itself give a cause of action; its purpose being to preserve rights already acquired and not to create new ones. * * An equitable estoppel cannot arise unless justice to the rights of others demands; its office being not to work a positive gain to a party, but to protect him from a loss which he could not otherwise escape, and hence should be limited to what is necessary to put the parties in the same relative position they would have occupied if the predicate of the estoppel had never existed." State ex inf. Shartel ex rel. City of Sikeston v. Missouri Utilities Co., supra, 331 Mo. 337, 53 S.W.2d 394, 401. "Estoppel does not create a cause of action; if none otherwise existed. It was never intended to work a positive gain to a party. Its whole office is to protect him from loss which, but for the estoppel, he could not escape." State v. Shell Pipe Line Corp., 345 Mo. 1222, 139 S.W.2d 510, 524(10–12); State ex rel. Moss v. Hamilton, supra; Brown v. Brown, supra.

The judgment is affirmed.

All concur.