Vernon PFARR and Cora A. Pfarr, Appellants,

v.

UNION ELECTRIC COMPANY, Respondent.

No. 50871.

Supreme Court of Missouri,

Division No. 2.

April 12, 1965.

Motion for Rehearing or to Transfer to Court En Banc Denied May 10, 1965.

————◆————

N. Murry Edwards, St. Louis, Ninian M. Edwards, Clayton, B. Richards Creech, St. Charles, for appellants.

Robert V. Niedner, Niedner, Niedner & Moerschel, St. Charles, for respondent.

EAGER, Judge.

In this declaratory judgment suit plaintiffs sought an adjudication that all of defendant's right, title and interest in certain real estate had been forfeited, and that all such interest had reverted to plaintiffs as fee simple owners. After arguments and briefs, defendant's motion to dismiss the petition was sustained and the petition was dismissed for failure to state facts which would entitle plaintiffs to relief. In connection with that motion, the parties filed a stipulation of facts. This was and is a somewhat unusual procedure, but no one objects to it here, and indeed all of the facts so stipulated are matters of record in the trial court in prior litigation between the same parties. Also, the same facts are before us in our prior transcript.

On January 10, 1961, Union Electric filed its petition in condemnation pursuant to § 523.010 [1] against these plaintiffs, seeking to condemn the real estate in question for the erection and maintenance of an electric power plant, substations, transmission and distribution facilities, etc. This petition sought specifically "to acquire, take and appropriate the above described real estate * * * for the purpose of erecting, constructing, keeping and maintaining power plant, substations and distribution facilities in order to manufacture and distribute electric power." A part of the condemnor's prayer was that defendants' damages be ascertained and that the Court enter a decree " * * * vesting in Plaintiff, its successors and assigns, the fee simple title * * * ." Motions to dismiss and to make more definite and certain were filed and overruled. In their answer defendants denied the allegation of public necessity and the sufficiency of the petition to comply with § 523.010, along with other denials and allegations. Sundry interrogatories asking for many details of the condemnor's plan were filed by defendants and thereafter quashed. A hearing on the petition was had on March 13 and 16, 1961, and evidence was heard; on April 1, 1961, the Court found the issues in favor of plaintiff on its petition and entered its order and judgment finding that plaintiff was entitled "to take, acquire and appropriate said real estate for the purposes set forth * * * "; it was further ordered that the lands "are and stand condemned" and that plaintiff should have the right of possession upon the payment of the damages awarded by the commissioners (who were appointed on the same day). The commissioners awarded defendants the sum of $85,000; both parties filed exceptions. At the trial before a jury the verdict was for $66,000. In their motion for a new trial the defendants specifically asserted that Union Electric had not obtained *title* and they had not been divested of *title,* because the condemnor had not deposited or paid interest on the award

---

1. All statutory citations are to RSMo 1959, V.A.M.S., unless otherwise stated.

of the commissioners. The defendants in that cause (present plaintiffs) appealed from the judgment and our opinion appears at 375 S.W.2d 1. The issues decided on that appeal concerned the instructions, the exclusion of evidence and certain questions regarding the payment of interest. It will be noted from that opinion that the case was tried and the jury instructed upon the theory that the defendants were entitled to the fair market value of their land, i. e., the value which a willing buyer would pay and a willing seller would take, and "on the usual and ordinary terms of private sale." The defendants offered and the Court gave an instruction on that theory, in addition to those offered by the condemnor. We have found nothing, either in the preliminary proceedings, the trial, or on the appeal to indicate that any suggestion was ever made contrary to the theory that a full transfer of title in the land was contemplated and was to be effected. These (present) plaintiffs withdrew the amount allowed them in the condemnation proceeding and have ever since retained it, with no offer of a tender back, in whole or in part. Union Electric took possession of the land upon its payment into the registry of the Court of the sum of $85,000, as allowed by the commissioners. This was on or about April 7, 1961.

The present petition alleges the substantive facts of the condemnation proceeding, that the (present) defendant "did obtain a judgment and decree of condemnation of plaintiffs' lands * * *," but that defendant illegally holds possession of the lands, that it has graded and "mutilated" them and is using them for farming and agriculture; that the property has never been rezoned for industrial purposes and that defendant has failed and refused to have it rezoned; that defendant's such acts, and its failure to use the lands for an electric power plant, are illegal and that defendant has "forfeited the right to use said land * * *" for the purposes for which they were so condemned. Plaintiffs pray an adjudication that all of defendant's rights in the land have been forfeited and that its interest has reverted to plaintiffs as fee simple owners.

Plaintiffs' sole point in their brief is that the Court erred in dismissing their petition because it alleged: (1) plaintiffs' illegal use of the land for agricultural purposes after it was condemned for an alleged public use; (2) that defendant had failed to have the land rezoned; and (3) that defendant had failed to use the property for an electric power plant, for which purpose it had been condemned. While insisting that the case should be considered on the merits and upon the hearing of evidence, counsel for plaintiffs frankly admitted in the argument that if Union Electric acquired a fee simple title in the condemnation, plaintiffs had no case.

We start with the established fact, taken from the allegations of the petition, the stipulation and our records, that these lands were condemned for a purpose judicially found to be a public purpose, in a proceeding which was and is entirely regular on its face. This suit was filed a little more than two years after the finding and judgment of condemnation, and six months *before* our opinion affirming the award in condemnation. In other words, it was filed while the amount of the award was still in litigation. It seems obvious that much of the land acquired for an extensive power plant would ultimately be used for auxiliary purposes such as storage, transmission lines, substations and like facilities.

Union Electric's position is, basically: that it is not necessary for a public utility to have property rezoned in order to use it for its public purposes; that only the State can challenge the use being made of condemned property; that it acquired a fee simple title and that there could be no forfeiture or reverter; and that plaintiffs have waived all further claims to the land by receiving the full condemnation award and failing to tender it (or any part of it) back. We shall not need to decide all those questions here.

We conclude that under these circumstances plaintiffs are estopped to deny that the defendant, Union Electric, acquired a fee simple title. It specifically prayed for such a title, the order of condemnation was made without qualification, the nature of the user sought was a permanent one, and the jury was very specifically instructed to return a verdict for the full, fair market value of the land. The appeal here was decided upon the theory of a passage of title and compensation for the full, fair value of the land. The plaintiffs accepted and retained the amount finally awarded as *such value,* and they have never offered (and do not now offer) to tender it back, or any part of it.

In O'Hara v. District of Columbia, 79 U.S.App.D.C. 302, 147 F.2d 146 (a school condemnation) the Court said, in part, loc. cit. 147–148: "Furthermore, in the condemnation proceedings involved here the jury were instructed to appraise the property at its full market value. Such instructions would not have been appropriate had anything less than a fee been condemned by the District." In Greenwood County v. Watkins, 196 S.C. 51, 12 S.E.2d 545, the Court had held that under South Carolina law the county had acquired a fee simple title in condemnation proceedings for a hydroelectric project, but as an additional reason for its decision, the Court said, at 12 S.E.2d, loc. cit. 551: "The plaintiff further contends that the defendant is now estopped to question the fact that the plaintiff acquired a fee-simple title to her land. The record in the condemnation proceeding, as heretofore pointed out, shows that the trial of the condemnation proceeded upon the theory that the plaintiff was acquiring the fee-simple title to the lands from the commencement of the proceeding on December 14, 1934, to the order overruling the motion for a new trial on October 10, 1938. During all of this time, she made no effort to enjoin the proceedings, or to raise the question, and she heard the judge charge the jury that the plaintiff was acquiring the fee-simple title, and she accepted the verdict of the jury, based upon that ruling. I am of the opinion that the rule applied in the case of Board of Commissioners for Clarendon County v. Holliday, 182 S.C. 510, 189 S.E. 885, 109 A.L.R. 1496, should be applied here. That case was an appeal from final judgment in a condemnation proceeding. There, the trial below had proceeded upon the theory that in that condemnation proceeding the question of the power to condemn could be adjudicated. In the Supreme Court, for the first time, the question was raised that in a condemnation proceeding, the only question involved is the amount of compensation, and the right to condemn is not involved. The court held that was true, but that the parties having participated in the trial on a different theory, even though it was erroneous, were estopped to raise the question."

Since the condemnation case was fully tried and adjudicated upon the theory that a fee simple title was being acquired, these parties are not permitted, upon appeal (or in a collateral attack), to adopt a different and inconsistent theory. Cleary v. Cleary, Mo., 273 S.W.2d 340, 348. The case of Luttrell v. State Highway Commission, Mo.App., 379 S.W.2d 137, bears some analogy here. There the Highway Department had built a road across certain land under authority of a deed which was wholly ineffective, it not being made by the owner. The actual owner knew of the construction but did nothing until after the road was completed. It was held that she could not maintain ejectment. In so far as that opinion may have referred to the remedy of damages in an "inverse condemnation" suit, we note here that the present plaintiffs have already received their damages.

The situation here is also somewhat analogous to those existing where the rescission of a contract or of a sale of land is sought. It is very generally held that a party seeking such relief must place or offer to place the other party in status quo, in so far as possible (55 Am.Jur., Vendor and Purchaser, § 636, p. 1029); and this doc-

trine, as applied to a vendor of land and in the absence of express agreement to the contrary, includes a return (or tender) of the purchase money received. Id. See also, McFarland v. Cobb, Mo., 64 S.W.2d 931; Gash v. Mansfield, Mo.App., 28 S.W.2d 127, 132. In White Oak Grove Benevolent Society v. Murray, 145 Mo. 622, 47 S.W. 501, the Court said at 47 S.W., loc. cit. 503: "The circuit court correctly ruled that, in equity and good conscience, defendants could not repudiate their deed while enjoying the purchase money; that, having recognized plaintiff as a corporation for the purpose of obtaining the money of its members, they were estopped, after its receipt and retention, to question its corporate character, and properly issued a perpetual injunction against all interference and intermeddling with plaintiff's rights to the land."

The elements of an equitable estoppel are present here. Emery v. Brown Shoe Co., Mo., 287 S.W.2d 761, 766–767; State ex inf. Shartel ex rel. City of Sikeston v. Missouri Utilities Co., Banc, 331 Mo. 337, 53 S.W.2d 394, 89 A.L.R. 607. In the latter case the Court said at loc. cit. 399 of 53 S. W.2d with reference to the doctrine of estoppel: "It 'stands simply on a rule of law which forecloses one from denying his own expressed or implied admission which has in good faith and in pursuance of its purpose been accepted and acted upon by another.' McFarland v. McFarland, 278 Mo. 1, 16, 211 S.W. 23, 27." Here all parties in the prior litigation, and the Court as well, acted upon the assumption that a fee simple title was being condemned and paid for; upon that assumption Union Electric paid the compensation awarded and these plaintiffs accepted it. It is too late for them to retract now. It is possible that this might also be classified as an "estoppel by record," but we do not need to go into that subject.

In opposing the contention of waiver and estoppel these plaintiffs say that they had a perfect right to take the money because the condemnation was allegedly for a public purpose; that, however, the refusal to use the land for that purpose has worked a "forfeiture" of the land to them, and that no tender was or is required. We are unable to follow the logic of that argument. They cannot recover the land and keep the money. And, as we have already held, they are now estopped to deny that the present defendant acquired a fee simple title.

Since the *facts* alleged in the present petition and the judicial records of the condemnation case made the conclusory allegations of illegality completely immaterial, the Court was justified in dismissing the petition of plaintiffs.

The judgment is affirmed.

All of the Judges concur.